# UNIONTOWN BANK *v.* MACKEY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF INDIANA.

No. 327.  Submitted April 20, 1891. — Decided May 11, 1891.

A promissory note made by two persons, one as principal and the other as
surety, was endorsed for the accommodation of the principal by the
payee, who afterwards, by agreement in writing with the holder, " waives
presentment for payment, protest, notice of protest, and consents that
the payment thereof may be extended until he gives written notice to
the contrary."  *Held,* that this authorized only an extension assented to
by both makers of the note; that an extension by agreement between the
holder and the principal, without the consent of the surety, discharged
the endorser; but that no agreement for an extension of time was shown
by the following facts: The holder having agreed with the principal
" to extend the credit upon renewal notes made by the same parties who
executed the original notes," and the surety being too sick to join in the
execution of new notes, the holder, at the principal's request, sent him
a statement of interest on the notes for four months, as well as blank
renewal notes to be signed by both makers when the surety should be
able to do so, and afterwards received such interest from the principal,
after the surety's death, not knowing he was dead, and expecting the
principal to procure and deliver renewal notes as before agreed.

THIS was an action brought September 14, 1886, by the
Bank of Uniontown, a corporation of Kentucky, against David
J. Mackey, a citizen of Indiana, as endorser of two promissory
notes for $5000 each, one dated July 20, and the other July
29, 1885, signed by the Mount Vernon Mill and Elevator Com-
pany and by George Naas, and payable to the defendant's
order at the plaintiff's bank in four months after date, with
interest at the rate of eight per cent yearly after maturity
until paid.   The complaint contained four counts, two on each
note.

The first and third counts alleged that the note was in fact
signed by the company as principal and by Naas as surety,
and was endorsed by Mackey for the accommodation of the
company, and discounted by the plaintiff in July, 1885; that
on November 20, 1885, Naas being then ill of what proved to

be his last sickness, and by reason thereof being unable to transact or consider any matter of business, as the defendant well knew, the company desiring to renew the note, procured the defendant to sign and deliver to the plaintiff an instrument in writing, (set forth in full, one of which is copied in the margin,[1] and the other differed only in the description of the dates when the note was made and payable,) by which he waived presentment for payment, protest and notice of protest of the note, and consented that the time for the payment thereof might be extended until he should give notice to the contrary in writing; *that on December 29, 1885, Naas not having recovered sufficiently to transact any business, or to renew the note, or to consent to an extension of the time of payment thereof, the interest on the note for four months after maturity was paid by the company, and the time for payment thereof was extended for those four months;* that Naas had died; and that by force of the statutes of Kentucky (set forth in the complaint and copied in the margin [2]) the note was placed on the footing of a foreign bill of exchange, and the plaintiff was entitled to maintain its action; *and that no part of the note had been paid but the interest thereon, as above stated.*

To each of these counts the defendant demurred, and the court sustained the demurrers.

The second and fourth counts were substantially like the

---

[1] This memorandum witnesseth that in the matter of a certain promissory note for five thousand dollars, dated July 20, 1885, and due November 20–23, 1885, wherein the Mount Vernon Mill and Elevator Company and George Naas are makers and D. J. Mackey is endorser, the undersigned hereby waives presentment for payment, protest, notice of protest, and consents that the payment thereof may be extended until he gives written notice to the contrary. Dated at Evansville, Indiana, this 20th day of November, 1885.                D. J. MACKEY.

[2] "Promissory notes payable to any person or persons, or to a corporation, and payable and negotiable at any bank incorporated under any law of this commonwealth, or organized in this commonwealth under any law of the United States, which shall be endorsed to and discounted by the bank at which the same is payable, or by any other of the banks in this commonwealth, as above specified, shall be, and they are hereby, placed on the same footing as foreign bills of exchange." Gen. Stat. c. 22, § 21.

first and third, except in substituting, for the words above printed in italics, an allegation (after setting forth the instrument of November 20, 1885) that "in consideration of the agreements therein contained, this plaintiff did not cause the said note to be protested for nonpayment, and consented that it might be renewed, and forebore to sue thereon until after the decease of said Naas," and an allegation that no part of the note had been paid but the sum of $136.65 paid on December 29, 1885.

To each of these counts the defendant filed an answer, admitting the making of the notes by the company as principal, and by Naas as surety, and the defendant's endorsement thereof for the accommodation of the company; and setting up that on December 21, 1885, Naas died, leaving children; that on December 24, 1885, an administrator of his estate was appointed and qualified; and that on December 29, 1885, the plaintiff, in consideration of the payment to it by the company of interest on the note for four months and three days from its maturity, agreed with the company to extend the time of payment of the note for that period, all of which was done without the knowledge or consent of the defendant or of the administrator of Naas. A replication was filed, a jury was duly waived in writing, and the case was submitted upon the issues of fact to the decision of the court, which made the following findings of fact:

"When the notes in suit were about to mature, to wit, November 20, 1885, the plaintiff having signified to the principal debtor, the mill and elevator company, its willingness to extend the credit upon renewal notes made by the same parties who executed the original notes, but the surety, Naas, being too sick to join in the execution of new notes, the officers of the mill and elevator company prepared and procured the defendant Mackey to sign the writings set out in the complaint, waiving presentment, protest, etc., of the notes in suit.

"From this time until December 29, 1885, various communications, verbal and-written, passed between the officers of the plaintiff bank and the officers or agents of the mill and elevator company in respect to the renewal of these notes, includ-

ing a letter of the latter, dated December 2, 1885, which is of the tenor following: ' Owing to Mr. George Naas's continued illness we have not as yet presented to him the matter of the renewal of our paper. If you will kindly send us statement of interest for four months, we will remit the amount; also please send few blank notes, so that we can have them filled out at earliest opportunity.'

" In reply to said letter the plaintiff sent to the defendant the blank notes filled out for four months, ready for signature, and also a statement of the amount of interest, with the direction that the interest should be remitted along with the renewal notes.

" On December 21, Naas died intestate at his home in Mt. Vernon, Indiana, leaving children, and on December 30, 1885, William Louden was appointed administrator of his estate.

" On December 29, the mill and elevator company paid to the plaintiff and the plaintiff received the sum of $273.30, as and for the interest upon the notes in suit for four months on each from the date of maturity — that is to say, from the 23d and 29th days respectively of November, 1885, until the 26th day of March and the 1st day of April, 1886, and being interest in advance from December 29, 1885, until the last-named dates.

" When this interest was paid and received, the officers of the bank were ignorant of the death of George Naas, and still expected the mill and elevator company to procure and deliver renewal notes as theretofore had been proposed. Nothing was said, at the time, expressly in respect to an agreement for an extension of time, nor was anything said to qualify or affect the legal force of the payment and receipt of the interest in advance. Neither the heirs nor the legal representatives of Naas knew of or ever afterwards assented to this payment of interest, or to an extension of the time of payment on those notes.

" The defendant Mackey neither at nor before the time thereof had knowledge of this payment of interest, and never afterwards did he assent to or ratify the transaction with a knowledge that it had been done without the consent of the heirs and of the representative of Naas."

Upon the facts specially found, the court concluded, as matter of law, "that there was made an agreement for an extension of time, as alleged in the answer, whereby the heirs and representative of the estate of the surety, Naas, were released from liability on the notes in suit; and this having been done without the consent of the defendant Mackey, he is also released from liability, and is entitled to judgment in his favor upon the issues joined and for his costs."

Judgment was rendered accordingly for the defendant, and the plaintiff sued out this writ of error.

*Mr. S. B. Vance* for plaintiff in error.

*Mr. G. V. Menzies* for defendant in error.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

It being alleged by the plaintiff, and admitted by the defendant, that Naas, one of the makers of the notes in suit, signed them as surety for the Mount Vernon Mill and Elevator Company, the other maker, and that the defendant, Mackey, endorsed the notes for the accommodation of that company, there can be no doubt that an agreement between the holder of the notes and the principal maker to extend the time of payment for a definite time, without the consent of the surety, would discharge him, and that such discharge of the surety, without the consent of the endorser, would discharge the endorser also.

The agreement in writing between the holder and the endorser, as to each note, by which the endorser "consents that the payment thereof may be extended until he gives written notice to the contrary," evidently contemplated and authorized only an extension of time which should neither discharge nor increase the liability of any party to the note. It looked to an extension consented to by both the makers of the note, and leaving them both liable to pay it at the end of the extended time; and not to an extension of time by agreement between the holder and the principal maker only, which would dis-

charge the second maker, being only a surety, and prevent the endorser, upon paying the amount of the note, from having recourse to him, as well as to the principal.

As the first and third counts alleged an extension of the time of payment of the note by the holder by agreement with the principal maker only, without any knowledge or consent of the surety, the demurrers to those counts were rightly sustained.

But upon the second and fourth counts the case is presented in a different aspect.

Each of these counts, without alleging either the receipt by the plaintiff of any interest or other consideration from the defendant, or any agreement to renew or extend the note for a definite time, simply alleged generally that the plaintiff did not cause the note to be protested for nonpayment, and consented that it might be renewed, and forbore to sue thereon until after the death of the surety. This was not an allegation of a definite agreement to forbear to sue, but only of an actual forbearance, which would not discharge a surety or an endorser.

The defendant evidently so understood the allegations of these counts, for, instead of demurring to them, (as he had to the other counts,) he answered, setting up a definite agreement between the plaintiff and the principal maker to extend the time of payment of the note for four months from its maturity, in consideration of the payment of interest on the note during such extension of time.

But the special findings of fact wholly fail to support this defence. From those findings it appears that, the plaintiff having signified to the principal maker its willingness "to extend the credit upon renewal notes made by the same parties who executed the original notes," and the surety being too sick to join in the execution of new notes, the plaintiff sent to the principal maker, at its request, a statement of the interest for four months, as well as blank renewal notes to be signed by both makers when the surety should be able to do so; and that such interest was paid by the principal and received by the plaintiff after the surety's death, the plaintiff at that time being ignorant of his death, and expecting that the principal

would procure and deliver renewal notes as before proposed, and nothing being then said as to an agreement for an extension of time, or as to the effect of the payment of interest. No present agreement for an extension of time can be inferred from the mere payment of interest under such circumstances. The necessary conclusion from the facts found is, that the plaintiff never agreed to extend payment of the old notes, except upon receiving new ones signed by both makers, which were never given; and that the payment of interest has no effect upon the case, except, as admitted in the complaint, by way of deduction from the amount that the plaintiff is entitled to recover.

*Judgment reversed, and case remanded with directions to enter judgment for the plaintiff on the second and fourth counts.*