HAMILTON NAT. BANK *v.* BREEDEN *et al.**

(*Knoxville.* September Term, 1914.)

**BILLS AND NOTES.** Indorser. Discharge. Extension of time of payment.

At the maturity of notes given in renewal of other notes, the maker explained to the holder that a surety on the notes was ill, and that his signature to renewal notes could not then be obtained, and the holder accordingly· accepted the sums required as discounts for renewals, on condition that the maker should get renewal notes properly signed by the surety as soon as his condition would permit. No new notes were signed by the maker and left with the holder. *Held*, that there was no agreement binding upon the holder to extend the time of payment, within Negotiable Instruments Law (Acts 1899, ch. 94), sec. 120, subd. 6, providing that a party secondarily liable is discharged by any agreement binding upon the holder to extend the time of payment, unless made with the assent of the party secondarily liable, or unless the right of recourse against him is expressly reserved, and the surety was not therefore discharged, since the holder agreed to permit renewals only on condition that the surety would sign the renewal notes.

Acts cited and construed:  Acts 1899, ch. 94.

Cases cited and approved:  Kuhlman v. Leavens, 5 Okla., 562; Williams v. Martin, 2 Duv., 491; National Park Bank v. Koehler, 204 N. Y., 174.

Cases cited and distinguished:  Barrett v. Davis, 104 Mo., 549; Miller v. McCallen, 69 Iowa, 681; Bank of Uniontown v. Mackey, 140 U. S., 220.

---

FROM HAMILTON.

---

*As to the effect, under negotiable instrument law, of extension of time to principal to release a surety or guarantor, see note in 31 L. R. A. (N. S.), 149.

130 Tenn. 30

Appeal from the Chancery Court of Hamilton County.—T. M. McConnell, Judge.

Garvin & Cantrell, for plaintiff.

Sizer, Chambliss & Chambliss, for respondent.

Mr. Justice Williams delivered the opinion of the Court.

The bank filed a bill of complaint against Breeden and Cook to recover on three notes, one for the sum of $500, another for the sum of $2,000, and the third for the sum of $1,000, which were executed by the Breeden Medicine Company, as maker, to the bank for money borrowed by that company; defendant Cook being treated for the purposes of this decision, as a surety thereon for a consideration paid by the company. Cook alone is contesting the payment of the notes; his contention being that the bank had made a binding agreement with the medicine company without his knowledge or consent, and without any express reservation of the right of recourse against him, whereby the time of payment was extended, and that he thereby was released.

The record discloses the facts pertinent to be: The notes in suit were remote renewals of the original notes of the series. It was the custom of the president of the maker company to go to the bank on maturity dates and renew the obligations, delivering renewal notes properly signed by Cook, but, when the said notes matured, the president, Breeden, explained to

an assistant cashier of the bank, who had charge of that department of the business, that Cook was ill in a hospital and could not be seen in order to get his signature. It may be stated that the sums required as discount on the several notes were accepted, but on condition that the maker should get renewal notes properly signed by Cook so soon as his condition would permit. As this course had been pursued previously when Cook was absent from the city, the assistant cashier presumed that Cook would join in the execution of renewal notes as he had done on such former occasions. Accordingly, on the agreement that such renewals would be brought in, he accepted the discount sums, and without entering any credits of interest paid, on the notes, he attached to each a "discount tag," indicating that the respective notes were to mature on the future dates to which interest was paid, and entries were made on the bank's discount register, indicating that the notes in suit were "paid." However, the notes thus tagged were placed and carried in an "incomplete file" on the desk of the assistant cashier, awaiting the coming in of the renewal notes. They were kept separate from notes completed as to renewal. The entries appear to have been made in anticipation of the redemption of the promise to bring in regular renewals. No new notes were signed by the maker and lodged with the bank.

The Negotiable Instruments Law (Acts 1899, ch. 94) in section 120 (6) provides that a party secondarily liable on a negotiable instrument is discharged:

"By an agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right to recourse against such party is expressly reserved."

We think the fundamental error in the contention of the surety, Cook, touching the transaction on maturity date, outlined above, is in premising that there was effective any "agreement binding upon the holder to extend the time of payment." Until such agreement is made, expressly or by implication, there does not come up for consideration the subsequent clause of the quoted section in respect to the effectuation of the surety's release, "unless the right of recourse against such party is expressly reserved." In other words, the express reservation of the right of recourse is to be conceived of as being incorporated as a dependent incident in and to the main agreement between the maker and the bank, binding upon the former, as holder, to extend or postpone.

By the terms of such main agreement in the pending case, there was to be no extension proper, and no renewals, except on condition that Cook would sign the renewal notes.

In the case of *Kuhlman* v. *Leavens, Executor,* 5 Okl., 562, 50 Pac., 171, interest on a note was paid in advance, with the understanding between the holder and the principal that the sureties would agree to an extension. The sureties had no knowledge of the ar-

rangement, but it was held that the extension was in effect conditional on the assent of the sureties, and they were still bound by the contract. In the course of the opinion the court, citing *Barrett* v. *Davis,* 104 Mo., 549, 16 S. W., 377, said:

"If it is a conditional contract dependent upon the assent of the sureties, it will not release them, because, until their assent is given, it is not binding between holder and maker of the note, and consequently cannot prejudice the rights of the sureties."

The case of *Miller* v. *McCallen,* 69 Iowa, 681, 29 N. W., 942, is directly in point. In that case, taking the distinction between extension and renewal, the court said:

"The facts appear to be that the plaintiffs are proprietors of the Lyon County Bank; that McCallen borrowed money at the bank, and gave the note in question, with Wagner as surety; that, some time after the note fell due, he went into the bank and paid the accrued interest on the note, and also signed another note, which it was expected Wagner would sign, as a renewal note, and at the same time he paid a certain amount as discount on the renewal note, but the old note was not surrendered, and was not to be surrendered unless Wagner signed the renewal note, which he never did. The plaintiff Miller testified that there was no agreement or conversation in regard to the extension of the note in suit. . . . What was done, indeed, was inconsistent with the idea of the extension of the note. What was done was for the purpose of

a renewal, which would have been entirely unneces-
sary, if there had been an agreement for an extension
of the original note.

"The defendant contends that the payment of dis-
count on the renewal note shows an extension of the
original note, but it appears to us that he wholly mis-
conceives the situation. Renewal did not take place,
and for the reason that the renewal note was not fully
executed. If renewal had taken place, the old note, of
course, would have been discharged, and Wagner
would have had no occasion to plead a release of him-
self by extension. The payment of discount on the
renewal note was in anticipation that it would be fully
executed and accepted in renewal."

In *Bank of Uniontown* v. *Mackey,* 140 U. S., 220, 11
Sup. Ct., 844, 35 L. Ed., 487, it appeared that the plain-
tiff bank had signified its willingness to take renewal
notes of the parties who had executed the original
notes, and, the surety being too sick to join in the
execution of the new notes, the bank sent to the maker
a statement of the interest for four months and a
blank note to be executed by the maker and his surety
when the latter should be able to do so. The interest
was remitted and received; but the court, through Mr.
Justice GRAY, said:

"Such interest was paid by the principal and re-
ceived by the plaintiff after the surety's death; the
plaintiff at that time being ignorant of his death, and
expecting that the principal would procure and de-
liver renewal notes as before proposed, and nothing

being then said as to an agreement for an extension of time, or as to the effect of the payment of interest. No present agreement for an extension of time can be inferred from the mere payment of interest, under such circumstances. The necessary conclusion from the facts found is that the plaintiff never agreed to extend payment of the old notes, except upon receiving new ones signed by both makers, which were never given; and that the payment of interest has no effect upon the case, except, as admitted in the complaint, by way of deduction from the amount that the plaintiff is entitled to recover.''

See, also, *Williams* v. *Martin,* 2 Duv. (Ky.), 491.

While the cases on the point are by no means numerous, they are clear to the effect that the surety is not released. The bank could have sued on the notes, now in suit, at any time within the period in contemplation for the renewals.

The case of *National Park Bank* v. *Koehler,* 204 N. Y., 174, 97 N. E., 468, relied upon by solicitors of the surety, is not pertinent, since there it was an established fact that the holder and the maker of the note had made an agreement which was not conditional, and the question discussed was whether the terms of the agreement expressed a reservation of the creditor's rights against the indorser—the subsidiary phase which we have not to deal with.

The defendant relies on the case of *Union Bank* v. *McClung,* 9 Humph., 98, but manifestly that case is not in conflict with what is here decided; its holding

being that an agreement to extend may be implied from the fact that interest is accepted by the payee. Here there was an express agreement contra.

The chancellor's decree made provision for the defendant surety receiving credit for the interest paid, as was done in *Bank of Uniontown* v. *Mackey,* supra; and that decree is affirmed.