### UNITED STATES FIDELITY & GUARANTY CO. v. WESTRUMITE PRODUCTS CO.

(Circuit Court of Appeals, Second Circuit. April 14, 1920.)

No. 200.

Indemnity ⬅️12—Indemnitor not discharged pending adjudication of indemnitee's liability.

> Plaintiff, which deposited bonds with defendant, a surety company, to indemnify it against liability, including costs, expenses, and counsel fees, by reason of its becoming surety, in compliance with an act of Congress, for parties granted a franchise to construct a street railroad in Hawaii, and required to complete a certain part of the road within two years, which was not done, *held* not entitled to recover the bonds on the ground that an extension by Congress of the time for doing the work, without defendant's consent discharged it from liability, where its liability was asserted and had not been adjudicated.

Ward, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Replevin by the Westrumite Products Company against the United States Fidelity & Guaranty Company. Judgment for plaintiff, and defendant brings error. Reversed.

Leonidas Dennis, of New York City (Robert Gray and Wm. J. McArthur, both of New York City, of counsel), for plaintiff in error.

William O. Gennert, of New York City, for defendant in error.

Before WARD, ROGERS, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The defendant in error sued in an action in replevin to recover from the plaintiff in error five bonds of the Baltimore & Ohio Railroad Company. These bonds were deposited with the plaintiff in error as collateral security under an indemnity agreement given by the Dunken Realty Improvement Contracting & Construction Company, to protect it against losses in the execution of a bond on behalf of the contracting firm of Conness & Johnson. Defendant in error was the assignee of the indemnitor, the Dunken Company. The plaintiff in error gave its bond, an indemnity agreement, to the county of Hawaii. A franchise was granted to Conness & Johnson and associates to construct and maintain a street railway in the district of South Hilo, Hawaii. The franchise provided that the construction of the road should be commenced within one year, and that at least two miles of the road should be completed and in operation within two years of such commencement. It was further provided, by this congressional act that Conness & Johnson give a bond to the county of Hawaii in the sum of $5,000, conditional for such completion, equipment, and operation of the two miles of the railroad within the period of two years. The surety company, the defendant below, executed and delivered its bond as such indemnitor. The bond provided that if the principal (Conness & Johnson), their associates and assigns, or any corporation that may be organized by them to take over and exercise the rights and privileges conferred by the act of Congress, shall, within two years, subject to the terms of said proviso, have completed, equipped, and have in full operation at least two miles of the railroad, then the obligation shall be void; otherwise, it was to remain in full force and effect.

The surety bond was executed on the 24th of October, 1912, and on August 20, 1913, the Dunken Company delivered the bonds in question to the plaintiff in error and entered into an agreement which stated the terms under which the bonds were deposited with the plaintiff in error. It was provided:

"First. That the surety company shall have the right in its discretion to retain said collateral, as hereinafter provided, until the liability of the surety company, on account of having executed said bond, shall cease and determine, and at its option to reclaim said collateral for its protection as surety upon any other bond, which it has executed or may hereafter execute for said Leland S. Conness and W. H. Johnson.

"Second. In case the surety company, for or by reason or in consequence of having executed said bond, or any other bond which it has executed or may hereafter execute for said Leland S. Conness and W. H. Johnson, shall for any cause, at any time, sustain or incur any liability, or be put to any loss, costs. charges, suits, damages, counsel fees, or expenses of whatever kind or nature, the said surety company shall have at any time or times thereafter full power and authority without notice to sell and assign and deliver said collateral, or any part thereof, at any broker's board, or at public or private sale. at the option of the said surety company, its successors or assigns. and with the right to be purchaser itself at such broker's board, or at public or private sale, and appropriate all the proceeds, or such part of the same as may be necessary in order to protect or reimburse itself against any such liability, loss, costs, charges, suits, damages, counsel fees, and expenses, as aforesaid, and after deducting all legal or other costs and expenses of such sale, and the aggregate amount of all said loss, costs, charges, fees, and expenses, as aforesaid, shall return the remainder of said collateral or the

balance of the proceeds from the sale thereof, as aforesaid, if any, to the said Dunken Realty Improvement Contracting & Construction Company or to any person or persons legally authorized to receive the same."

The contractors or principal debtors of Conness & Johnson did not comply with the franchise provision requiring that the two miles of railroad be completely equipped and in operation within the two-year period. The time for completion expired August 1, 1914. However, before the expiration of the two-year period, Congress passed an act extending the time for four years after the date of the original franchise. This meant an extension of two years. Such extension was given without the consent or approval of the plaintiff in error or that of the owner of the bonds, the Dunken Company. At the end of the extended period, the principal debtors had failed to complete the two miles, and Congress again extended the time two years, without the consent of the plaintiff in error or the indemnitor. The acts of Congress were without the consent of the plaintiff in error. Upon failure to build the two miles of railroad and have the same in operation, and on October 24, 1912, the board of supervisors of the county of Hawaii made a claim and demand upon the plaintiff in error for the penalty of its bond. A resolution was passed to this effect. A certified copy was served upon the plaintiff in error.

It is contended by the defendant in error that the extension of time as granted by Congress to do the work, which the bond guaranteed would be performed, operated as a discharge of the surety from any liability on its bond, and therefore the indemnitors are entitled to receive back the bonds received as collateral, upon the ground that liability on the bond given to the county of Hawaii has ceased and determined. The rule is well settled that if a creditor or obligee, by a valid and binding agreement, without the assent of a surety, gives further time for payment or performance to the principal debtor, the surety will be discharged. Clark v. Gerstley, 204 U. S. 504, 27 Sup. Ct. 337, 51 L. Ed. 589; Uniontown Bank v. Mackey, 140 U. S. 220, 11 Sup. Ct. 844, 35 L. Ed. 485. The agreement between the Dunken Company and the plaintiff in error, under the terms of which the bond was deposited, provided further:

"In case of full determination of liability to the surety company on said bond without any loss or damage to it as aforesaid, * * * competent evidence furnished to that effect, the said collateral shall thereupon be returned."

It was incumbent upon the defendant in error to prove by competent evidence a full termination of liability to the surety company on said bond "without any loss or damage to it as aforesaid." Concededly, there has been a breach of the provision of the franchise for failure to construct, complete, and operate the road as agreed would be done. The plaintiff in error indemnified the county of Hawaii against a loss resulting from such breach, and the plaintiff in error could only be relieved from responsibility under its bond upon the claim that, the time of performance having been extended without the consent of the plaintiff in error, the obligations under the bond have been relieved.

But the plaintiff in error is still obligated to defend a threatened action. A claim is presented having a force of official action on the part of the supervisors of the county of Hawaii. It may or it may not be prosecuted in a court of law, but there is the danger to the plaintiff in error that such prosecution of the claim will be undertaken. We cannot say that the county of Hawaii would be unsuccessful in its attack upon the validity of the extensions of time granted by Congress. The question is not presented to us now. Even if the plaintiff in error was successful in an action, it still might incur counsel fees and expenses of litigation. Collateral security was deposited to protect against such loss. The defendant in error has not attempted, by legal proceedings, to have it judicially determined, that the liability under the bond given by the plaintiff in error has ceased and determined. No action has been instituted in which the county of Hawaii and the plaintiff in error have been made parties. The plaintiff in error was not obligated to institute such proceedings to have itself relieved from liability on the bond. This was a burden which the defendant in error assumed under the terms of the contract.

There can be no adjudication in this proceeding that the bond given the county of Hawaii is no longer in force and effect, or that it be delivered up and canceled. The plaintiff in error is constantly exposed to this claim of the county of Hawaii. It may be called upon to answer in an action until the statute of limitations runs against the alleged claim. In its protection against such a hazard to it, it provided the terms of the contract under which the bonds were pledged. We cannot take away the protection which it thus accorded to itself by the mutual consent of the parties. The contract between the parties must be the jurist's guide. Any hardship which might result to either party cannot vary the contract. Cook v. Casler, 76 App. Div. 279, 78 N. Y. Supp. 661. A determination cannot be reached by this court, in the absence of the county of Hawaii being a party to the action, which will operate to relieve the surety from the liability on the bond, and thus afford an answer to the claim which is made by the surety company that it may still suffer loss by reason of the undertaking. To take away the collateral security which the plaintiff in error now holds would be tantamount to permitting a breach of the contract under the terms of which it entered into the obligation to indemnify the county of Hawaii.

Judgment reversed.

WARD, Circuit Judge (concurring). I concur in the judgment of the court, but upon a different ground, namely, that the liability of both principal and surety on the bond given to the county of Hawaii became absolute August 1, 1915. The Act of Congress of August 1, 1912, c. 270, 37 Stat. 243, which conferred the franchise upon the association to build the railway, provided among other things that construction should begin within one year after the passage of the act, viz. August 1, 1913, and that two miles of the railway should be completed and equipped for the transportation of passengers within two years

after such commencement, viz. August 1, 1915. It further required that a bond in the sum of $5,000, conditioned for the completion, etc., of the two miles of railway, should be given by the association receiving the franchise to the county of Hawaii within 90 days after the passage of the act.

October 24, 1912, this bond was given, the United States being no party to it. Nothing whatever was done by the association prior to August 1, 1915. The Act of August 1, 1912, was twice amended by Congress (Act July 25, 1914, c. 208, 38 Stat. 555; Act Aug. 7, 1916, c. 275, 39 Stat. 438), so as to extend the time for commencement of construction and of completion of two miles of the railway to August 1, 1920. While these acts prevented forfeiture of the franchise by the government before that time, they did not mention the bond in question, and in no way affect its terms. Therefore in my opinion liability on the bond became complete August 1, 1915.