BAYER & MINGOLLA CONSTRUCTION COMPANY, INC. *vs.* HECTOR J. DESCHENES & another.

Worcester.     December 10, 1964. — March 2, 1965.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Surety.  Bond,* Surety, Contractor's bond.  *Public Works.*

A compensated surety on a performance bond of a subcontractor furnished to the general contractor on a public construction project was not discharged by extensions of time for performance of the subcontract not granted pursuant to any enforceable agreement for new consideration between the contractors and not shown to have harmed the surety. [599]

A "condition" of a performance bond furnished by a subcontractor to the general contractor on a public construction project, that "upon receipt of written notice from . . . [the general contractor of default by the subcontractor the surety] shall have the right within thirty . . . days . . . to remedy the default," was intended merely to afford the surety an opportunity to make sure that the cost of doing the work necessary to remedy the default would not exceed the cost at which the surety itself could have the work done. [600]

A compensated surety on a performance bond, furnished by a subcontractor to the general contractor on a public construction project and providing that within thirty days after notice from the general contractor to the surety of a default by the subcontractor the surety should have the right to remedy the default, was not discharged by failure of the general contractor to give the surety notice of the subcontractor's abandonment of the job until a time nearly two months after the abandonment and shortly before the general contractor completed the sub-

contractor's work, where it appeared that the surety "was not . . . damaged by" the general contractor's completing the work and that the general contractor's delay in giving the surety notice of the subcontractor's default "was not injurious to" the surety. [603]

G. L. c. 30, § 39A, and c. 149, § 29, as appearing in St. 1957, c. 682, § 1, both provide security for the payment of charges for the use of dump trucks on a State highway project. [604]

One who let dump trucks and operators for use on a State highway project and had a claim against statutory security furnished under G. L. c. 149, § 29, as appearing in St. 1957, c. 682, § 1, and filed his sworn statement of claim within the ninety day period provided therefor was entitled to the benefit of that security even though he also had had a claim against statutory security furnished under G. L. c. 30, § 39A, but had lost the benefit thereof through failure to file his sworn statement of claim within the sixty day period provided therefor. [603, 604]

CONTRACT. Writ in the Superior Court dated December 10, 1959.

The defendants appealed from orders for judgment for the plaintiff by *Meagher, J.*, after hearing on an auditor's report.

*Robert J. Sherer* (*Frederick W. Roche* with him) for the defendant Aetna Insurance Company.

*Seymour Weinstein* for the plaintiff.

CUTTER, J. The plaintiff (Bayer) was the general contractor on a State highway contract (the prime contract), awarded on a unit price basis. The defendant Deschenes made a subcontract with Bayer to do certain excavation work "in strict compliance with . . . the [p]rime [c]ontract" which was incorporated by reference in the subcontract. The subcontract unit prices were lower than the prime contract unit prices. Under the subcontract all work was to start not later than November 24, 1958. Deschenes started work on December 1. The work was to be completed on or before March 1, 1959, a period of three months plus one week. By June 22, 1959, when he quit, Deschenes had completed only about half the work.

The subcontract required Deschenes to "furnish a bond with surety satisfactory to" Bayer in the sum of $91,000, "conditioned that . . . [Deschenes] shall faithfully perform this [subc]ontract and satisfy all claims and demands

in connection with the performance of same and shall pay
all bills contracted for . . . in connection with the work
. . . and shall reimburse . . . [Bayer] for all . . . expense
which . . . [Bayer] may incur in making good any default
of'' Deschenes. Deschenes furnished a bond of Aetna In-
surance Company (Aetna) for $91,000, which incorporated
the subcontract by reference, to indemnify Bayer ''against
any loss or damage directly arising by reason of . . .
[Deschenes's] failure . . . faithfully [to] perform . . . [the
sub]contract'' and to pay claims for labor and materials,
''subject . . . to the following express conditions [among
others] . . . (2) That upon receipt of written notice from
. . . [Bayer] of [Deschenes's] default . . . [Aetna] shall
have the right within thirty . . . days after the receipt of
such notice to remedy the default or to proceed, or procure
others to proceed, with the performance of such [subc]on-
tract; that if . . . [Aetna] does proceed or procure others
to proceed with the performance of such [subc]ontract . . .
all money that may at the time of such default be due, or
that thereafter [may] become due to . . . [Deschenes] un-
der said [subc]ontract shall become due and payable to
. . . [Aetna] and . . . [Aetna] shall be subrogated to all
the rights of . . . [Deschenes].''[1]

There were various disputes between Bayer and Des-
chenes over quantities and billings. Certain portions of
the work were done by Bayer prior to June 22, 1959, for
Bayer's ''own convenience and to facilitate other work . . .
and Deschenes was either impliedly or expressly relieved
from doing this work.''[2] In June, 1959, representatives of
Bayer talked with Deschenes, who ''told them that he had
an opportunity to do another job . . . and was going to

---

[1] For convenience the quoted condition is hereinafter referred to as Con-
dition (2).

[2] Section 10 of the subcontract permitted Bayer, if Deschenes should ''fail
in any respect to prosecute the work with promptness or diligence . . . to
provide such labor, materials and equipment as . . . [Bayer] may deem
proper, and to deduct the cost thereof from any money then due or . . . to
become due to'' Deschenes. No contention is made that Deschenes's surety
is responsible for any extra cost of subcontracted work done by Bayer before
June 22, 1959.

leave the Bayer . . . job." Bayer's chief engineer said that they were "far behind schedule" and that he "wanted him to stay on the job." It may easily be inferred that Bayer at all times was interested in getting Deschenes to perform his subcontract, rather than treating him as in default. On June 22, 1959, Deschenes removed his last equipment from the job.

Bayer sent to Aetna various progress reports (the first sent on February 2, 1959) showing in each instance a probable completion date later than that set out in the subcontract. The last report indicated a probable completion date of December 1, 1959. When Deschenes left the job site, Bayer proceeded itself to complete the subcontracted work and finished doing so by September 2, 1959. On August 18, 1959, Bayer notified Aetna of Deschenes's default. Deschenes was adjudicated a bankrupt on November 3, 1960.

As a consequence of these events, Bayer brought this action at law against Deschenes and Aetna for breach of contract and to recover on Aetna's bond.[3] The facts already stated are based upon the report of an auditor, whose findings were to be final. He found that Bayer is entitled to recover $15,134.95 from Deschenes and Aetna for work that Bayer was required to do because of Deschenes's breach of the subcontract.

The auditor also found (a) that "any extensions of the completion date . . . [of the subcontract were] by mutual

---

[3] Other matters, not now before us, were heard with this action before the same person acting as auditor and master. Such matters were (a) a bill in equity by Deschenes (and one Quinn, an intervening plaintiff who claimed for trucks furnished to Deschenes) against Bayer and its surety; and (b) a bill in equity by one Macomber who seeks to recover from Deschenes, Bayer, and Bayer's surety under G. L. c. 149, § 29, for fuel oil furnished to Deschenes. In respect of the other matters, it was found (1) that Macomber seasonably filed his claim in accordance with G. L. c. 149, § 29, and that Deschenes owed him $1,037.74 plus interest of $249.06 to be paid by Bayer or its surety; (2) that Deschenes owes Quinn $2,052.75 plus interest of $493.66, to be paid by Bayer or its surety; (3) that Bayer owes Deschenes $5,164.50 plus interest of $1,239.48, against which should be credited the $1,286.80 due to Macomber and the $2,546.41 due to Quinn, and (4) that Bayer is entitled to set off any money owed by it to Deschenes against the recovery by Bayer against Deschenes.

agreement of Bayer . . . and Deschenes"; (b) that Aetna "had knowledge that the completion date had been extended"; (c) that Aetna "was not [in] any way damaged by Bayer . . . performing the balance of the work required by the sub-contract" and that Bayer's delay in giving Aetna notice of Deschenes's default "was not injurious to Aetna"; and (d) that on August 21, 1959, Aetna acknowledged Bayer's notice to it of Deschenes's default.

The judge ordered judgments on the auditor's report for Bayer for $16,848.66 against both Aetna and Deschenes. From these orders Aetna and Deschenes appealed.

1. Aetna contends that it is discharged as surety by the extensions of time for performance given by Bayer to Deschenes, despite Aetna's knowledge of these extensions, and the absence of any finding of injury to Aetna caused thereby. Aetna, however, "is a compensated surety and is not entitled to invoke the ancient doctrine of strictissimi juris." *Veneto* v. *McCloskey & Co.* 333 Mass. 95, 104. See *Agoos Leather Cos. Inc.* v. *American & Foreign Ins. Co.* 342 Mass. 603, 608; *Maryland Cas. Co.* v. *Dunlap,* 68 F. 2d 289, 291 (1st Cir.).[4]

In the case of an accommodation surety, "where the principal and creditor, without the surety's consent, make a binding agreement to extend . . . time . . . the surety is discharged unless the creditor in the extension agreement reserves his rights against the surety." Restatement: Security, § 129 (1). See *Brockton Sav. Bank* v. *Shapiro,* 311 Mass. 695, 702–704. Cf. *Northampton Inst. for Sav.* v. *Putnam,* 313 Mass. 1, 5–6 (burden rests on surety of showing an extension and that it was discharged). The modern rule, however, with respect to a compensated surety, see

---

[4] In the *Maryland Cas. Co.* case, Judge Morton said that certain changes from the original plans "worked no harm to the . . . [insurance company] in any way. . . . [C]ompensated sureties stand on a very different footing from voluntary ones. They are in effect insurers and ought not to be relieved from their obligations on merely technical grounds, not affecting substantially the character of the undertaking which they assumed." See *Massachusetts Bonding & Ins. Co.* v. *Feutz,* 182 F. 2d 752, 756 (8th Cir.); *Home Indem. Co.* v. *F. H. Donovan Painting Co.* 325 F. 2d 870, 873–874 (8th Cir.); Restatement: Security, § 82, comment i, § 129; Williston, Contracts (2d ed.) §§ 1212A, 1222; Stearns, Suretyship (5th ed.) §§ 1.2, 6, 8; Simpson, Suretyship, 365; Appleman, Insurance Law and Practice, § 6792.

Restatement: Security, § 129 (2), is that such a surety "is discharged only to the extent that he is harmed by the extension." See *Guaranty Co.* v. *Pressed Brick Co.* 191 U. S. 416, 423–426; *American Auto Ins. Co.* v. *United States,* 269 F. 2d 406, 408–409 (1st Cir.); *United States* v. *Bruce Constr. Corp.* 272 F. 2d 62, 66 (5th Cir.); *Phoenix Assur. Co.* v. *Buckner,* 305 F. 2d 54, 57–58 (8th Cir.). See also Appleman, Insurance Law and Practice, §§ 6796, 6848–6851; annotation, 12 A.L.R. 382. Cf. Stearns, Suretyship (5th ed.) §§ 6.8, 6.16–6.19. Present day authority thus generally rejects, with respect to compensated sureties, the contrary rule stated in *Schwartz* v. *American Sur. Co.* 231 Mass. 490, 493–494 (where there was no apparent consideration of the circumstance that the case dealt with a compensated surety). Cf. *Manufacturers' Fin. Co.* v. *Rockwell,* 278 Mass. 502, 505; *Taborsak* v. *Massachusetts Bonding & Ins. Co.* 289 Mass. 8, 12–13; *Hartford Acc. & Indem. Co.* v. *Cassassa,* 301 Mass. 246, 252.[5]

In any event, it is only by a binding, enforceable agreement for new consideration for an extension, which cannot be rescinded or disregarded, that the discharge of a surety will be effected. See Restatement: Security, § 129, comment c. The auditor's finding concerning the extensions of time for performance is merely that they were made "by mutual agreement of Bayer . . . and Deschenes." This finding does not import to us an enforceable agreement for consideration but merely Bayer's effort to obtain even dilatory performance by Deschenes. Cf. *Taborsak* v. *Massachusetts Bonding & Ins. Co.* 289 Mass. 8, 12–13 (binding agreement).

We hold that Aetna, which has not shown itself to have been harmed by the extensions of time, was not thereby discharged as surety.

---

[5] See for the suggestion that compensated sureties on performance bonds on building contracts contemplate that there will be delays in, and extension of time for, performance, and thus impliedly consent to them, *United States* v. *McMullen,* 222 U. S. 460, 468–469; *Massachusetts Bonding & Ins. Co.* v. *John E. Thompson Co.* 88 F. 2d 825, 829 (8th Cir.); Stearns, Suretyship (5th ed.) § 6.8.

2. Aetna contends that Bayer is barred from recovery on the performance bond by its failure to notify Aetna promptly of Deschenes's default, and thus to give Aetna "an opportunity, within thirty days after receiving [such] notice . . . to . . . complete the work left undone." Condition (2), see fn. 1, is stated in the bond to be an express condition.

Condition (2) does not expressly require Bayer, as obligee of the bond, to give notice of Deschenes's default. It does, however, imply that Bayer was bound to give such notice within a reasonable time (see *Segal* v. *Aetna Cas. & Sur. Co.* 337 Mass. 185, 187–188) so that Aetna might have opportunity to decide whether it would complete Deschenes's work as a method of minimizing its own loss.

No purpose of Condition (2) is stated other than to give Aetna the opportunity to make that decision. Indeed, the absence from Condition (2) of any specific requirement for giving Aetna notice of a default strongly suggests that no investigation by Aetna (other than of the appropriate method of keeping completion costs low) was contemplated.

Express requirements for prompt notice of a loss or an accident are often found in insurance contracts. In respect of insurance contracts, however, the situation is somewhat different, for it is frequently important that an insurer have such prompt notice, so that seasonable investigation of the facts relating to liability may be undertaken. Cf. *Boston Elev. Ry.* v. *Maryland Cas. Co.* 232 Mass. 246, 250–251; *Kana* v. *Fishman,* 276 Mass. 206, 210–211; *Wainer* v. *Weiner,* 288 Mass. 250, 251–252; *Potter* v. *Great Am. Indem. Co.* 316 Mass. 155, 157; *O'Kane* v. *Travelers Ins. Co.* 337 Mass. 182, 184; *Maryland Cas. Co.* v. *Hunter,* 341 Mass. 238, 243–244. Cf. also Appleman, Insurance Law and Practice, § 4732.

Although Condition (2) is expressed as a condition, we regard it as designed only to assure Aetna that the cost of making good any default by Deschenes would not be greater than that for which Aetna itself could do the work, or could procure it to be done. This purpose has been accomplished,

despite Bayer's delay in giving notice, for the auditor has found that Aetna "was not [in] any way damaged by Bayer['s] . . . performing the balance of the work." This finding we interpret as meaning that Bayer did the work as economically as Aetna could have arranged to have it done, and that Aetna was not otherwise harmed by the delay in giving notice.[6]

Bayer's delay did not enlarge Aetna's risk. If Condition (2) is regarded only as limiting Aetna's liability to the amount for which it could get Deschenes's omitted work done, Aetna's risk remained essentially the same amount regardless of whether notice was given. Accordingly, noncompliance with Condition (2) would not extend Aetna's risk of loss in the same way in which an insurer's risk may be expanded by noncompliance with the notice provisions (designed to facilitate loss investigation) of an insurance contract. If Bayer is barred from recovery on the bond because of such noncompliance, even if in fact no loss or damage has been caused to Aetna, the consequence will be a forfeiture of all the protection for which Bayer has bargained and for which Aetna has been paid.

Considerations of this character have led some courts to hold compensated sureties upon bonds, notwithstanding the violation of a provision for notice of default, if the violation in fact has caused no harm to the surety. This result reflects a general reluctance to relieve a compensated surety of its obligation because of any insubstantial, harmless violation of such a notice provision, even if expressed as a condition. The principle is in some respects analogous to that underlying the authorities already mentioned, holding that a compensated surety is not discharged by an extension of time which has done him no harm. Indeed, the language of some of those authorities (see e.g. fn. 4) is broad enough to cover the present situation.

---

[6] Although we do not know what evidence was before the auditor, this finding is at least consistent with the probability that a prime contractor with his equipment on the job site would be in a good position to do the work economically. Probably, he would also be able to do it much more quickly.

Under the older cases, Condition (2) would have been regarded as an express condition of Aetna's liability and Aetna would have been treated as discharged by Bayer's failure to comply strictly with any express or implied provision of Condition (2). See *National Sur. Co. v. Long,* 125 Fed. 887, 891 (8th Cir.); *United States Fid. & Guar. Co. v. Rice,* 148 Fed. 206, 208 (8th Cir.); Stearns, Suretyship (5th ed.) §§ 5.7, 7.16. See also *Burdett v. Walsh,* 235 Mass. 153, 155 (where the court did not enforce a surety company bond when the precise circumstances which would give rise to liability, in accordance with the letter of the bond, had not occurred).[7]

On the other hand, in addition to general language in cases cited in the first part of this opinion, the following authorities protect a compensated surety only to the extent that it has been harmed by nonperformance of a condition requiring notice of the principal's default. See *School Dist. No. 1 v. McCurley,* 92 Kans. 53, 55; *Martin v. Robinson,* 127 Kans. 100, 103; *Rose v. Ramm,* 254 Mich. 259, 261–262; *MacNear v. Malow,* 282 Mich. 239, 243; Merrill, Notice, §§ 536, 824; note, 42 Harv. L. Rev. 838.[8] That there is a split in authority is recognized in *Southern Sur. Co. v. MacMillan Co.* 58 F. 2d 541, 545–546 (10th Cir.). See Simpson, Suretyship, 169–171; Dole, Notice Requirements of Guaranty Contracts, 62 Mich. L. Rev. 57, 92–97; annotation, 23 A.L.R. 2d 1065, 1071–1076.

---

[7] The most closely applicable provisions of Restatement: Security, §§ 111, 136, if they deal with the problem at all, do so somewhat inconclusively. The implication of § 136, however, is that an express condition requiring notice will be enforced.

[8] Statements generally supporting this position are found in the following authorities, but in various respects the cases may be distinguishable. See *Illinois Sur. Co. v. Huber,* 57 Ind. App. 408, 413 (delay in giving notice caused no harm); *Maule Indus. Inc. v. Gaines Constr. Co.* 157 So. 2d 835, 837 (Fla. Dist. Ct. of App.); *Hartford Acc. & Indem. Co. v. Hattiesburg Hardware Stores, Inc.* 49 So. 2d 813, 819 (Miss.); *Lackland v. Renshaw,* 256 Mo. 133, 146, 151–152; *Heffernan v. United States Fid. & Guar. Co.* 37 Wash. 477, 481 (but see *Monro v. National Sur. Co.* 47 Wash. 488, 491). See also Corbin, Contracts, § 726; Williston, Contracts (3d ed.) § 675, esp. p. 189, and (2d ed.) § 1237 esp. at pp. 3545–3546; Appleman, Insurance Law and Practice, §§ 6792, 11492. Cf. *Haddock Constr. Co. v. Wilber,* 178 Ore. 659, 668 (actual injury to surety from late notice).

On balance, we do not extend the strict rule of the insurance cases to the present situation so as to cause a forfeiture. We hold that, in the circumstances, Aetna was not discharged by Bayer's failure to give prompt notice of Deschenes's default, where Aetna has not been harmed. We need not discuss to what extent a different result would be necessary if Aetna had been caused damage by nonperformance of Condition (2) or if the notice of default had been for the purpose (a) of investigating whether liability had arisen, or (b) of preventing loss of evidence or further loss, or (c) of avoiding other appreciable damage to the surety. Cf. *Gilmour* v. *Standard Sur. & Cas. Co.* 292 Mass. 205, 210–211.

3. Aetna contends that the claim of one Quinn against Deschenes and against Bayer and its surety should not have been allowed.[9] Quinn, as intervener, filed a claim more than sixty days, but less than ninety days, after Quinn's work had been done, for about 241 hours of use of dump trucks and operators. The auditor in effect found "as a matter of fact" that Quinn's claim was not governed by the sixty day period for filing claims for the hire of "dump trucks . . . from common or contract carriers for use in the prosecution of such contract" under G. L. c. 30, § 39A (inserted by St. 1951, c. 694), but was governed by the ninety day limitation provided by § 29 (as amended through St. 1957, c. 682, § 1; see later amendments by St. 1962, c. 696, and St. 1964, c. 609, §§ 4 and 5). Section 29, as amended, includes claims "for the rental or hire of vehicles" and "for labor performed," terms broad enough to include Quinn's claim so far as that claim is described in the record.

Section 39A and § 29, in respect of dump trucks seem to have, in part at least, overlapping coverage, although § 39A (unlike § 29) in terms extends to charges for such vehicles incurred by others than prime contractors and subcontrac-

---

[9] The allowance of this claim in computing the set-off by Bayer to Deschenes's claim against Bayer (see fn. 3) makes this claim relevant to the amount of Bayer's recovery against Aetna.

tors. Section 39A expressly states that the security required in accordance therewith is "in addition to the security required by" c. 30, § 39. Section 39 (as amended through St. 1955, c. 702, § 1), was repealed by St. 1957, c. 682, § 2, and the provisions of c. 149, § 29, were broadened by St. 1957, c. 682, § 1, to supplant c. 30, § 39, and to cover much the same ground.[10] Because c. 30, § 39A, provided security in addition to that required by former § 39, we interpret it as providing also security in addition to that provided by c. 149, § 29, although, as to persons protected by both sections, it is coextensive. There is no reason why a claimant, like Quinn, who is within the scope of c. 149, § 29, and who complies with that section, should not have the benefit of the security thereby required, even if he does not comply with c. 30, § 39A. As Quinn's claim under c. 149, § 29, was seasonably filed, it is immaterial that any claim which Quinn might have under c. 30, § 39A, was not seasonably filed.[11]

4. The order for judgment against Aetna is affirmed. The questions raised by a bill of exceptions filed by Aetna (to the denial of its motion for judgment) have been dealt with upon its appeal. Aetna's exceptions are dismissed. Deschenes filed no brief. His appeal is dismissed.

*So ordered.*

---

[10] Nothing in the legislative history of c. 682 indicates that § 39A was thereafter designed to be the sole statutory source of security for claims of a type covered by that section. See 1957 House Docs. Nos. 1837 and 2982, and 1957 Senate Doc. No. 443.

[11] This court had no occasion to discuss the relationship of c. 30, § 39A, and of old c. 30, § 39 (predecessor in part of c. 149, § 29), in *Duteau* v. *Salvucci*, 330 Mass. 531, 533–534, in which the controversy occurred when both § 39 and § 39A required filing of claims within a sixty day period. This period was extended, in respect of § 39, to ninety days by St. 1955, c. 702, § 1. See *J. J. Struzziery Co. Inc.* v. *A. V. Taurasi Co. Inc.* 340 Mass. 481, 487. We perceive no legislative intention that § 39A was to be an exclusive remedy in cases also covered by the language of old § 39 and present c. 149, § 29. Cf. *Clancy* v. *Wallace*, 288 Mass. 557, 564.