THE STATE OF OHIO, APPELLEE, *v.* SAFECO INSURANCE
COMPANIES ET AL., APPELLANTS. ▌
[Cite as State v. Safeco Ins. Co. (1978),
60 Ohio App. 2d 186.]

(No. 1226—Decided October 4, 1978.)

*Mr. William J. Brown,* attorney general, *Mr. Raymond
J. Studer,* and *Mr. Melvin R. Adrian,* for appellee.
*Messrs. McNamara & McNamara, Mr. Paul Tague,* and
*Mr. David S. Cooper,* for appellants.

SHERER, P. J. General Insurance Company of America,
hereinafter referred to as General, is appealing from a judg-
ment of the Common Pleas Court of Clark County denying
General's motion for a summary judgment and from that
Court's summary judgment in favor of The Ohio Bureau of
Motor Vehicles, pursuant to its motion therefor.

The state's complaint alleges facts which show that from
March 1, 1971, to February 28, 1975, General was a surety on
a bond running to the state as the obligee. The bond is
designated a Deputy Registrar's Blanket Position Bond. By
the terms of the bond General agrees to indemnify the state

from and against any losses caused by the failure of any deputy registrar to faithfully perform his duties as required by law.

The bond provides:

"The liability of the surety is subject to the following conditions:

"Section 8 - The obligee shall notify the surety of any default hereunder on the part of any person filling any position covered hereunder within a reasonable time after discovery thereof by the obligee. Such notice shall set forth the name and address of the person causing such loss and the position filled by such person.

"Section 9 - Within six months after discovery as aforesaid of any default hereunder, the obligee shall file with the surety affirmative proof of loss, itemized and sworn to, on proof of loss form in use by the surety, and shall, if requested by the surety, produce from time to time, for examination by its representative, all books, documents and records pertaining to such default."

The complaint involves a claim made by the state for the alleged failure of Carol Shirk, a deputy registrar, to faithfully perform her duties, to account to the state for money she had collected for the state in the sale of motor vehicle license plates and operator's licenses. (Paragraph 3 of the Complaint.)

In its answer, General states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3, and other paragraphs of the complaint which, by reason of the provisions of Civ. R. 8 (B), must be considered a denial thereof.

General's answer admitted the existence of the bond and denied its liability thereon because of the state's failure to comply with the provisions of Sections 8 and 9 of the bond relating to notice and proof of loss.

Following the filing of General's answer and the state's reply thereto, General moved for a summary judgment on December 6, 1976.

To support its motion, General submitted the affidavit of George B. Downs, with documents attached, which show that on May 6, 1974, the Auditor of State sent a delinquent claim

memorandum describing a claim of the Department of Highway Safety, as follows:

"Claim in the amount of $12,405.87 represents a shortage in the 1973 plate and drivers account of former deputy registrar, Carol Shirk, 9777 Milton-Carlisle Road, New Carlisle, Ohio. *Pertinent information is attached.* To the Attorney General: I hereby certify for collection the above claim." (Emphasis supplied.)

A letter attached shows that on April 5, 1976, a special counsel for the Attorney General wrote a letter received by General advising that he received the claim for collection on January 9, 1975, and that he had obtained a default judgment against Shirk on May 16, 1975, on the claim which is the same amount the state seeks to collect from General as surety in this instant action.

The affidavit of Downs recites that these attachments were the first documentation General received from the state with respect to the state's claim. His affidavit further recites that such attachments do not comply with Sections 8 and 9 of its bond.

The state filed no documents in opposition to General's motion as contemplated by Civ. R. 56. The state filed only a memorandum in opposition to General's motion.

Thereafter, on February 23, 1977, the state filed its motion for summary judgment against General with no supporting documents.

On January 31, 1978, the trial court overruled General's motion for summary judgment and rendered a summary judgment in favor of the state against General in the sum of $12,405.87 with interest, at the rate of six percent per annum, from May 13, 1976, and costs.[2]

---

[2] The trial court's decision and entry awarding a summary judgment to the state reads as follows:

"This cause is submitted to the Court on Plaintiff's motion for summary judgment.

"Decision

"On consideration of the pleadings, memoranda of counsel, affidavits, exhibits and oral arguments of counsel and construing the same most strongly in favor of the Defendant finds:

"That Defendant, General Insurance Company of America, on March 1, 1971, prepared and issued a surety bond for four (4) years as shown by Defendant's Attachment #1.

General assigns seven errors to the court's action of January 31, 1978.

First, we will consider the errors assigned to the summary judgment in favor of the state.

The first error assigned by General is that the trial court erred in rendering a summary judgment in favor of the state.

Civ. R. 56 (C) provides, in part:

"* * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be

"That during the four (4) year term of the bond Carol Shirk was a deputy registrar covered under said bond.

"That the Plaintiff suffered an undiscovered loss as a result of the failure to account by Carol Shirk as deputy registrar in the sum of Twelve Thousand Sixty Nine Dollars and thirty seven cents ($12,069.37) and Three Hundred Sixty Six Dollars and fifty cents ($366.50) as shown by Defendant's Attachments #3 & #4.

"That the default on the part of Carol Shirk was not officially discovered by Plaintiff until the claim was referred to Plaintiff's special counsel on January 9, 1975.

"That Defendant, General Insurance Company of America, received notice of default from Plaintiff by letter of counsel on April 6, 1976.

"That Sections 8 and 9 of said bond were substantially complied with.

"That Carol Shirk failed to account to Plaintiff for Twelve Thousand Four Hundred Five Dollars and eighty-seven cents ($12,405.87) is not denied by Defendant, General Insurance Company of America, in Defendant's answer or memoranda or oral argument of counsel.

"That Defendant, Safeco Insurance Companies, is a group of insurance companies of which Defendant, General Insurance Company of America is one.

"That there is insufficient evidence to impute any responsibility of Defendant, General Insurance Company of America to Defendant, Safeco Insurance Companies.

"That reasonable minds could come to but a conclusion that there is no genuine issue as to any material fact and that Plaintiff is entitled to judgment as a matter of law against Defendant, General Insurance Company of America, Plaintiff's motion should be sustained."

"Entry

"It is therefore ordered and adjudged that judgment be and hereby is granted to Plaintiff against Defendant, General Insurance Company of America in the amount of Twelve Thousand Four Hundred Five Dollars and eighty seven cents ($12,405.87) together with interest at the rate of 6% per annum from May 13, 1976 and costs.

"It is further ordered and adjudged that Plaintiff's motion for summary judgment be and hereby is overruled as to the Defendant, Safeco Insurance Companies."

considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.''

The motion of the state for summary judgment was not supported by any affidavits, documents or other material filed by the state. The trial court had before it, for consideration of the state's motion, only the Pleadings, the bond and the affidavit of Downs with its attachments, and the court was required to construe the evidentiary facts most favorably to General.

Before it could establish liability for General, (1) the state was required to prove the existence of a bond furnished by General in which it agrees with the state that it will, as surety, indemnify the state for any loss it may suffer by reason of default on the part of Carol Shirk to properly account to the state for money collected by her for the sale of license plates and driver's licenses as deputy registrar. The existence of such bond for such purpose is admitted by General.

(2) The state was required to show that Shirk failed to account to the state for such money.

The state's complaint, in paragraph 3, alleges that Shirk failed to account for money collected by her for the state. We have previously pointed out that General's answer must be considered a denial of such allegation because of Civ. R. 8 (B). The documents submitted by General in support of its motion for summary judgment, and now considered in opposition to the state's motion for summary judgment, construed most favorably to General, do not show that Carol Shirk failed to account to the state in the sum of $12,405.87. Neither are they sufficient to warrant the trial court's conclusion that reasonable minds could conclude that there is no genuine issue of material fact and that the state is entitled to judgment as a matter of law.

Neither the affidavit of Downs nor the attachments thereto submitted in support of General's motion for summary judgment serve to prove the amount of the state's claim because they do not contain statements of fact relative

thereto as required by Civ. R. 56 (E). Downs could not testify to such facts from his own personal knowledge. He was only stating what he had been told in the letter of April 5, 1976, from the special counsel for the Attorney General. Furthermore, General was not bound by the default judgment taken by the state against Shirk on May 16, 1975, mentioned in the special counsel's letter. Downs' affidavit states, in effect, that General was not aware of the litigation leading to the default judgment and was not a party thereto. See 50 Ohio Jurisprudence 2d 569, Suretyship, Section 55. His affidavit serves only to establish the fact of the state's knowledge of Shirk's failure to account to the state for money received by her for the state. The document attached to Downs' affidavit, the Debit Memorandum of Shirk's default, is not sworn to as required by Section 9 of the bond. The letter of the special counsel for the Attorney General dated April 5, 1976, contains no sworn statement as to the amount of Shirk's default, as required by Section 9 of the bond.

There remains a genuine issue of material fact, whether Shirk failed to account to the state for $12,405.87 she had collected for the state.

Appellant argues also in Assignment of Error 3 that the trial court erred in finding that reasonable minds could come to but one conclusion, which is:

"That the Plaintiff suffered an undiscovered loss as a result of the failure to account by Carol Shirk as deputy registrar in the sum of $12,069.37 and $366.50 as shown by Defendant's attachments #3 and #4."

Assignments of Error 2 and 3 are well taken because the attachments do not qualify under Civ. R. 56 (E) as proof of facts appearing therein and because there is no sworn statement on behalf of the state showing the amount of Shirk's default as required by Section 9 of the bond.

Appellant, in Assignment of Error 5, argues that the trial court erred in finding as a matter of law that Sections 8 and 9 of the bond were substantially complied with.

Section 8 required the state to give notice to General of Shirk's failure to account for money collected by her for the state within a reasonable time after discovery of her default.

Section 9 required the state to file with General proof of

its loss within six months after the discovery of Shirk's failure to so account.

Sections 8 and 9 of the bond are prefaced by these words: "The liability of the surety is subject to the following conditions."

The state argues, that "the law has long required that when the defendant is a surety for profit, under normal circumstances, late notice does not relieve the surety of liability***." This legal position is still firmly entrenched in surety law.

The state cites, among others, the following cases: *Ireland Lumber Yard* v. *Progressive Contractors, Inc.* (N. D. 1963), 122 N. W. 2d 554; *Robertson Lumber Co.* v. *Progressive Contractors, Inc.* (N. D. 1968), 160 N. W. 2d 61; *Bayer & Mingolla Construction Co.* v. *Deschenes* (1965), 348 Mass. 594, 205 N. E. 2d 208; *Maule Industries, Inc.* v. *Gaines Construction Co.* (Fla. App. 1963), 157 So. 2d 835; *American Fire & Casualty Co.* v. *Collura* (Fla. App. 1964), 163 So. 2d 784; *Carnival Cruise Lines* v. *Financial Indemnity Co.* (Fla. App. 1977), 347 So. 2d 825.

In *Ireland* and *Robertson,* the bonds did not specify that notice was required to be given to the surety, as is the case before us.

In *Bayer* an extension of time for performance of a contract was agreed upon by a contractor to a subcontractor which was known to the bonding company. The court stated the rule that a compensated surety is discharged only to the extent that he is harmed by the extension.

In *Maule Industries,* the court held that a failure to give a compensated surety notice of the principal's default, required in the bond, does not relieve the surety where such failure has resulted in no injury to the surety. *Carnival Cruise Lines* holds to the same view.

General, to support its claim of error, cites *Kornhauser* v. *The National Surety Company* (1926), 114 Ohio St. 24, which, in the third paragraph of the syllabus, holds:

"A contract between an employer and a bonding company provides that the employer shall, within a given time after becoming aware of any evidence of dishonesty of an employe, give notice thereof to the surety. This provision constitutes a condition precedent, and when the employer fails to

comply therewith he cannot recover even though the defalcation described in the bond, by employes covered by the bond, has taken place and loss has ensued."

The court in *Kornhauser,* stated, at page 34, that the contract (bond) there involved was a contract of suretyship for profit. At page 36, the court said that, with respect to notice, the bond provided:

" 'Upon the employer becoming aware of any evidence of dishonesty of any employe, the employer shall at the earliest practicable moment, and in any event not later than five (5) days thereafter, give written notice thereof addressed to the surety at its home office.' "

In the case before us, the bond provides that the liability of General is subject to conditions 8 and 9 of the bond. Nothing could be any plainer than that such sections were conditions precedent to the liability of General.

As we interpret these sections, Section 8 required the state to notify General within a reasonable time after discovery of any fraudulent or dishonest acts of Shirk *or* of her failure to faithfully perform her duties *or* to account properly for all money properly received by virtue of her employment during the bond period.

We interpret Section 9 to require the state to file proof of its loss with General within six months after discovery of Shirk's default.

The bond required General to pay the state for any money it lost by reason of any of the foregoing defaults of Shirk.

Exhibit "A" attached to the affidavit of Downs on behalf of General filed in support of General's motion for summary judgment shows that the state knew on May 6, 1974, that Shirk was in default for failure to report her collections to the state when it certified a claim for shortages in her account to the Attorney General for collection.

The affidavit of Downs, not rebutted in any fashion by the state, shows that the state first notified General of Shirk's default on April 5, 1976.

Documents filed by General show that the state on May 13, 1976, filed proof of its loss with General.

We conclude that the documents filed herein by General, construed most favorably to General, show as a matter of law

that the state failed to notify General of Shirk's default within a reasonable time after its discovery thereof on April 5, 1974, as required by Section 8 of the bond and that the state failed to file its proof of loss with General within six months after discovery of Shirk's default on April 5, 1974. The state argues a number of facts incident to its dealings with its Registrars and the role of the Attorney General in relation thereto which it is claimed show that the state acted within a reasonable time. However, these facts cannot be considered because they were not shown as required by Civ. R. 56.

We hold that the trial court erred to the prejudice of General in rendering a summary judgment in favor of the state and against General. That judgment will be reversed.

Next, we consider General's second assignment of error, that the trial court erred in failing to render a summary judgment in its favor.

Construing the pleadings, the affidavit of Downs and the attached documents most favorably to the state, we hold that the state failed to notify General of Shirk's default within a reasonable time after discovery thereof, as provided in Section 8 of the bond, that the state failed to file proof of its claim with General within six months after such discovery, as required by Section 9 of the bond and that the trial court erred in failing to render summary judgment in favor of General.

The trial court's judgment overruling General's motion for summary judgment is reversed and a summary judgment is granted in favor of General and against the state.

*Judgment reversed.*

McBride and Kerns, J J., concur.