Brennan, J.
In this matter Brian M. Carlino (hereinafter, the plaintiff) brought suit against Aetna Casualty and Surety Company (hereinafter, the defendant) for property damages arising out of a motor vehicle accident which occurred on September 30, 1989.
Count I of the plaintiffs complaint sought damage in the amount of $5,800 under the collision coverage portion of the automobile insurance policy which the defendant had issued to him on September 1,1989. The defendant admitted issuing the insurance policy but denied that it had improperly refused to make payments to the plaintiff under the terms and conditions of the policy.
The Court found for the plaintiff in the amount of $5,800 plus prejudgment interest and costs.
After hearing the Court found as follows:
Plaintiff purchased a 1986Toyota2 door coupe on September 1,1989. On the same day, plaintiff requested insurance coverage from the L.Y. Toole Insurance Agency, an agent of Aetna Insurance Company. A policy was written on the vehicle through the Aetna Insurance Company; the coverage included collision and comprehensive coverages. Plaintiff paid a deposit of $650 and received a receipt for it. He was told he must have the automobile inspected within seven days or the collision and comprehensive coverages would be suspended as of that time. Plaintiff signed a form titled “Acknowledgement of Requirement for Preinsurance Inspection (This is NOT a safety inspection).” This form acknowledged he had been informed about the requirement of a preinsurance inspection. Plaintiff was informed that the inspection must be by an authorized garage and that Lee Sunoco Station was an authorized garage.
Plaintiff spoke to James Kelley, owner-operator of Lee Sunoco Station, on September 2 or 3 and told him of the need for an inspection. Kelley told him to bring the car to the garage the following Tuesday.
Plaintiff brought the car to the garage on September 5, 1989, in the morning and told an unnamed employee that Toole Agency had sent him for an inspection. He left the car at the garage for the day. When he picked the car up in the afternoon, he asked if there were any papers to be signed and was told that there were none and that he was all set.
The log book regularly kept by Lee Sunoco shows a safety inspection was done on plaintiffs vehicle on September 5,1989. Preinsurance inspections are sometimes noted in the log, but not always.
On September 9, 1989, Aetna Insurance Company called Careo, the coordinating company for garages authorized to perform preinsurance inspections for Aetna, and inquired whether a preinsurance inspection had been performed on the vehicle with the vehicle identification number of plaintiffs policy. Aetna was informed it had not been done. Aetna then suspended plaintiffs coverage for collision and comprehensive as of *192 September 9,1989, at 12:01 a.m.
Aetna mailed notice of the suspension of collision and comprehensive coverages to plaintiff on September 28,1989. Plaintiff received such notice on October 4,1989.
Plaintiffs vehicle was damaged in an accident on September 30,1989, in New York state. Damage to the vehicle rendered it a total loss. Plaintiffs mother notified the Toole Insurance Agency of the loss on October 2,1989.
Aetna has not paid for the damage to the plaintiffs vehicle under the insurance policy stating that plaintiffs collision and comprehensive coverages were suspended as of September 9,1989, and thus not in effect as of September 30,1989.
Purchase price and value of the vehicle was $6,300.
The written and oral instructions given to the plaintiff did not require that he receive an inspection, only that he submit to the required inspection. I find he did so. The motor vehicle was not inspected through the fault of the insurer.
At the close of the trial the defendant made the following requests.
25. The evidence warrants a finding that the insurer, through its producer, furnished Mr. Carlino with a list of inspection sites where the inspection could be conducted, in compliance with 211 CMR 94.07 (2) (b).
The trial judge found “...that the plaintiff, Mr. Carlino, was given one inspection site where the inspection could have been conducted. I deny that request.”
33. The evidence warrants a finding that pursuant to 211 CMR 94.09 (1) the motor vehicle physical damage coverage on the plaintiffs motor vehicle was properly suspended on September 9,1989, at 12:01 a.m.
The trial judge answered:
“I find that the insurance policy was not properly suspended on September 9, 1989.1 deny that request.”
Massachusetts General Laws c.175, §113S(b) and (c) read that a motor vehicle undergo a preinsurance inspection conducted by the insurer or its authorized representative prior to the insurer providing insurance coverage.
G.L.c.175, §113S(c) (1); 211 Code Mass. Regs. §94.09 provides that:
If the motor vehicle is not inspected pursuant to this regulation due the fault of the insurer... physical damage coverage shall not lapse.
43. Upon all the evidence admitted during the course of the trial of this action, a finding for the defendant is required as a matter of law.
The Court denied this request.
Claiming to be aggrieved by the rulings of the Court on the above mentioned Requests for Rulings Nos. 25, 33, and 43 the defendant reported the matter to the Appellate Division.
The issues raised by the defendant clearly involve questions of fact and not conclusions of law. The appellant is seeking to have the Appellate Division review a general finding of a trial judge. It has been clearly established that the Appellate Division only rules on questions of law. An appeal of a general finding does not present a question of law for review. Chadwick v. Desroches, 333 Mass. 769 (1956). The Appellate Division “should not sub stitute its judgment for that of the trial judge who by virtue of his first hand view of the presentation of evidence is in the best position to judge the weight and credibility of the evidence.” Drain v. Brookline Savings Bank, 327 Mass. 435 (1951), Oberg v. Burke, 348 Mass. 596, 598 (1963).
We find no errors of law. The report is hereby dismissed.