## MURRAY CITY v. BANKS et al.

No. 3977.   Decided October 4, 1923.   (219 Pac. 246.)

1. PRINCIPAL AND SURETY—ACCEPTANCE OF A NOTE, IN ABSENCE OF AN AGREEMENT, DOES NOT CONSTITUTE "PAYMENT," DISCHARGING SURETY. Where a city on default of an officer took his note for the default, such note, in the absence of an agreement, does not constitute a "payment" of the obligation, so as to discharge a surety.

2. PRINCIPAL AND SURETY—ACCEPTANCE OF A NOTE WITHOUT PREJUDICE DOES NOT DISCHARGE A SURETY FOR HIRE BECAUSE EXTENDING TIME OF PAYMENT. Where a city accepted the note of an officer for a shortage without consent of his surety, in absence of prejudice, such extension of time of payment did not discharge a surety engaged in suretyship as a business.

3. PRINCIPAL AND SURETY—CONTRACT CONSTRUED AGAINST COMPENSATED INSURER. The rule of strictissimi juris does not apply in favor of a surety engaged in the business of suretyship for compensation, and the contract is construed most strongly against him, both in determining his liability in the first instance, and in determining sufficiency of the grounds for discharge from liability.[1]

Appeal from District Court, Third District, Salt Lake County; *M. L. Ritchie,* Judge.

[1] *Walker Realty Co.* v. *American Surety Co.,* 60 Utah, 435, 211 Pac. 998.

Action by Murray City against William A. Banks and the American Surety Company. From a nonsuit, and judgment for defendant surety, plaintiff appeals.

REVERSED.

*John E. Pixton*, of Murray, for appellant.

*Cheney, Jensen, Holman & Stephens*, of Salt Lake City, for respondent.

CHERRY, J.

The plaintiff is a municipal corporation. Defendant Banks was one of its officers. Defendant American Surety Company (hereinafter called the surety), is a corporation authorized to do a surety business in this state, and was the surety on the official bond of Banks. Banks defaulted in his accounts, and the plaintiff sued the defendants on the bond to recover the shortage. The execution and delivery of the bond, and the default of Banks were admitted in the pleadings. Banks filed no answer. The surety alleged that the plaintiff took a note from Banks in payment of the shortage, and that the surety was thereby discharged from liability. The plaintiff denied that the note was taken in payment of the shortage, or for any other purpose than acknowledgment of the obligation. When the shortage was discovered, certain officers of the plaintiff took a note from Banks for the amount of his shortage, payable six months later, bearing 6 per cent. interest, and providing for the payment of a reasonable attorney's fee, etc.

The only evidence relating to the purpose for which the note was given, and the circumstances attending its execution, was the following: Mr. Berger, a city commissioner, said to Banks, after the latter had acknowledged the amount of the indebtedness, "If you will give us a note of acknowledgment of that amount of indebtedness, then we will have this fixed; we won't have to quote these books any more, and we can get somewhere and know when you promise to pay

these things," and that he "was willing to give him until the 1st day of September, 1920, to pay out this default." The city recorder stated "that there was an informal understanding that he should be allowed to have through the summer to work this thing out, etc." The city engineer stated that after Banks admitted the default, Mr. Berger asked the city attorney to make out some kind of a note for Banks to sign, recognizing the fact that he was in default, saying, "something about down in black and white." Banks thereupon signed the note, and delivered it to the city recorder. At the maturity of the note Banks paid $50.05 which was ·by the city recorder credited on the back of the note.

The plaintiff submitted its case upon the foregoing evidence whereupon the defendant surety moved for a nonsuit, upon the grounds: (1) That the note was taken in payment of the obligation admitted in the pleadings; and (2) that an extension of time was granted to the principal, on the obligation sued on, without the consent of the surety.

The trial court made findings of fact to the effect that the note had been executed and delivered to the plaintiff, and a payment made and credited on it, and concluded that the plaintiff, by accepting the note, thereby extended the time of payment of the amount due until September 1, 1920, without the knowledge or consent of the surety, and the surety was thereby relieved from liability. The nonsuit was granted and judgment entered for the defendant surety, from which the plaintiff appeals.

We first note a cross-assignment of error made and argued by the respondent, based upon the refusal of the trial court to make a finding of fact upon the evidence that the note was taken by the plaintiff in payment of the obligation secured by the bond.

The rule of law on this subject is that in the absence of an agreement, express or implied, between the parties, that it is to be received as payment, a note of a debtor, given for his precedent debt, is not a payment of the original demand. 30 Cyc. 1194, 1201; A. L. & Sons Co. v. M. G. & M. Co., 173 Fed. 855, 97 C. C. A. 465, 35 L. R. A. (N. S.) 1. In this case there was no evidence whatever of an express

agreement to take the note as payment. The only evidence on the subject was that the note was taken as an acknowledgment of the amount due. There was no fact or circumstance shown, from which it could be inferred that there was an agreement to take the note as payment, and such agreement is not inferred from the fact of taking the note. The trial court correctly disposed of that matter. The cross-assignment of error fails.

The plaintiff's appeal presents for review the decision and judgment of the trial court discharging the surety upon the grounds that an extension of time of payment was granted, without the consent of the surety. It was not alleged or proved that the surety suffered any prejudice or damage in consequence of the extension. The question for decision is: Does an agreement of the obligee of a bond, extending the time of payment to the principal, without the consent of the surety, of itself and without a showing of prejudice, discharge the surety, when the latter is engaged in the surety business for hire, and as such has executed the undertaking?

As pointed out in *Walker Realty Co.* v. *American Surety Co.*, 60 Utah, 435, 211 Pac. 998, the law of suretyship, of late years, has undergone a change. In the interpretation of the surety's liability a distinction is made between a voluntary gratuitous surety and one who makes suretyship a business for compensation. The reasons for the rule of strictissimi juris applied in favor of the former do not exist in favor of the latter and with respect to the latter the rule is reversed, and the contract is most strongly construed against him. This doctrine, while of comparative recent origin, is widely recognized and approved. See annotation to *Royal Ind. Co.* v. *Northern G. & S. Co.*, 100 Ohio St. 373, 126 N. E. 405, 12 A. L. R. 378.

The same distinction is made, and the corresponding rule is applied, to both the determination of the surety's liability in the first instance and the sufficiency of the grounds by which he may be later discharged from liability. The courts generally hold that a compen-

sated surety can be relieved from its obligation for surety-ship only where a departure from the contract is shown to be a material variance, and that it must show some injury done before it can be absolved from its contract. 21 R. C. L. 1161.

In *Rule* v. *Anderson*, 160 Mo. App. 347, 142 S. W. 358, the court said:

"The deep solicitude of the law for the welfare of voluntary parties who bound themselves from purely disinterested motives never comprehended the protection of pecuniary enterprises organized for the express purpose of engaging in the business of suretyship for profit. To allow such companies to collect and retain premiums for their services, graded according to the nature and extent of the risk, and then to repudiate their obligations on slight pretexts that have no relation to the risk, would be most unjust and immoral and would be a perversion of the wise and just rules designed for the protection of voluntary sureties. The contracts of surety companies are contracts of indemnity, and, as such, fall under the rules of construction applicable to contracts of insurance. Since they are prepared by the companies, and generally abound with conditions and stipulations devised for the restriction of the obligation assumed by the company, such stipulations must not be extended to favor limitations providing for forfeiture of the contract. They must be strictly construed, and no unreasonable right of forfeiture should be allowed."

With respect to the precise question as to whether a surety for hire will be relieved from his contract by an extension of time to the principal, without a showing of injury occasioned thereby to the surety, the decisions in the negative are numerous and uniform.

In *Guaranty Co.* v. *Pressed Brick Co.*, 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242, Mr. Justice Brown, speaking for the court relative to the discharge of a paid surety, said:

"We are remitted to the naked proposition whether the giving of a customary credit, with no evidence of loss thereby occasioned, is sufficient to discharge the surety. We find no difficulty whatever in answering this question in the negative."

In *City of Philadelphia* v. *Fidelity & Deposit Co.*, 231 Pa. 208, 80 Atl. 62, without the consent of the surety (a corporate surety company) a note was accepted with an express agreement for an extension of time for the obligation secured by the bond. The note was renewed on four occa-

sions, with like agreements for extensions of time. No harm to the surety was alleged. The court held that there was no presumption of prejudice to the surety, and that it was not relieved from liability by the extension of time.

In *People. v. Traves,* 188 Mich. 345, 154 N. W. 130, the court held an extension of time by taking notes from the principal debtor did not release the surety, who was engaged in the business of becoming surety on bonds for profit, where it was not claimed or shown that the surety was in any manner prejudiced or actually harmed by the extension complained of.

In *Standard Salt & Cement Co.* v. *Nat. Surety Co.,* 134 Minn. 121, 158 N. W. 802, the principal gave the creditor a six months' note for the amount due. The extension of time was recognized as valid. It was without the consent of the surety. No harm to the surety was shown. The court said:

"We hold that the extension of time of payment, unless resultant harm is shown, does not discharge a paid surety in a bond such as is before us."

See, also, *U. S.* v. *U. S. F. & G. Co.* (C. C.), 178 Fed. 721; *Ohio Co.* v. *Clemens,* 85 W. Va. 11, 100 S. E. 680, 7 A. L. R. 373, 21 R. C. L. 1163.

The rule laid down in the foregoing cases is sound and wholesome, and is supported by both reason and authority. We readily approve it, and apply it to the case at bar. There was no sufficient grounds appearing to justify the discharge of the surety. The trial court erred in granting the nonsuit and entering judgment for the surety.

The judgment is reversed. Costs to appellant.

WEBER, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.