REA CONSTRUCTION COMPANY v. THE ERVIN COMPANY

No. 7626SC862

(Filed 15 June 1977)

Guaranty § 1— guaranty of account — acceptance of principal debtor's note — no release of guarantor

    Defendant was not released from its guaranty of payment of the principal debtor's account with plaintiff by plaintiff's acceptance of the principal debtor's note for the amount due on the account where the note was executed some 18 months after defendant breached its contract with plaintiff by denying it had guaranteed the account and refusing to pay plaintiff after the account had become past due, the principal debtor paid the installments due on the note except for the final installment, and the validity of defendant's guaranty was judicially determined some 10 months after the final installment became due, since (1) it is clear that defendant did not intend to pursue the principal debtor until the validity of the guaranty had been judicially determined, which was 10 months after the "extension" granted by plaintiff had expired, and (2) after defendant breached its contract, plaintiff exercised ordinary business prudence in successfully attempting to mitigate its damages.

APPEAL by plaintiff from *Thornburg, Judge*. Judgment entered 26 April 1976 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 13 April 1977.

Plaintiff brought this action to recover on an account it alleges was guaranteed by defendant.

The case was tried by the court without a jury.

Plaintiff does not bring forward and argue any assignments of error directed to the facts as found by the court. The facts so found may be summarized (except where quoted) as follows:

Plaintiff is engaged in the sale of asphalt to other paving contractors. In February, 1971, Queen City Paving Company

was a paving contractor buying asphalt from plaintiff that was used in paving work performed by Queen City for defendant. Defendant was engaged in real estate development and contracted with Queen City for the pavement of streets and driveways in some of its subdivisions.

In February, 1971, Queen City's account with plaintiff was overdue in the amount of $18,739.15. Plaintiff advised Queen City that additional assurance of payment was required.

On 17 February 1971, the President of Queen City requested defendant to guarantee payment to plaintiff of Queen City's current account. The manager consulted with other employees of defendant, including an officer of the corporation. Thereafter, on company stationery, the manager wrote the following letter to plaintiff:

" 'This letter is to advise you that The Ervin Company will guarantee payment of the current asphalt account of Queen City Paving Company for work done by Queen City Paving Company for The Ervin Company and its subsidiaries.' "

The court's findings continued:

"8. After Plaintiff received the February 17, 1971 letter, it continued to sell asphalt to Queen City on open account with the same terms.

9. At the time of receipt of this February 17, 1971, letter, Plaintiff also set aside Queen City's pre-February 1971 balance of $18,739.15 and began maintaining a separate bookkeeping identity for this indebtedness;

10. From February 17, 1971, Queen City paid for its asphalt purchases from Plaintiff on a current basis until June or July 1971 at which time it again failed to pay for asphalt within 30 days of purchase;

11. There were no communications between Plaintiff and Defendant with respect to this February 17, 1971, letter until payment by Queen City started getting slow again at which time Plaintiff's office manager began communicating with another employee of Defendant who was in charge of approving payment of Queen City's invoices to Defendant and Plaintiff demanded payment of Queen City's indebtedness to it by Defendant in October 1974; [1971?]

12. Plaintiff's demand prompted a meeting between officers of the parties and Queen City on October 29, 1971, at which time Defendant advised Plaintiff that B. I. Bates had been acting without authority in writing the February 17, 1971, letter to Plaintiff, that Defendant would not voluntarily pay any amounts to Plaintiff by reason of the letter, and that the matter would have to be settled in a court of law;

13. On October 29, 1971, Queen City's account with Plaintiff for the period from February 1971 forward was past due in the amount of $34,613.37;

14. At this October 29, 1971 meeting, Plaintiff, Defendant and Queen City did agree that it was in the best interest of all of them that an effort be made to salvage the business of Queen City; and, thereafter, Queen City continued to do paving for Defendant with asphalt supplied by Plaintiff and billed directly to Defendant, which arrangement involved substantial amounts from time to time, all of which were paid by Defendant to Plaintiff, and continued until late 1973 or 1974;

15. Even though there were discussions at this October 29, 1971 meeting of the previously accrued indebtedness, specifics concerning payment or its interrelationship with the new arrangements were never agreed to;

16. During the period November 1971 up to June 1973, Plaintiff assumed financial control of Queen City but during this period no credit whatever was given for any part of the past due indebtedness of Queen City to Plaintiff;

17. On June 22, 1973, Plaintiff accepted the promissory note of Queen City payable to its order in the amount of $53,292.52 for 'credit extended on open account' and consisting of the pre-February 1971 balance of $18,739.15 and the February-October 1971 balance of $34,613.37;

18. Said promissory note provided for interest at the rate of 8% per annum and for the payment of the principal due in three installments over a period extending until June 1975;

19. Defendant was neither informed nor consulted about Plaintiff's agreement to convert Queen City's open

account indebtedness to this installment note and never agreed thereto;

20. The first installment due under the terms of this note in the amount of $23,292.52 plus interest was due on August 1, 1973, and was paid by Queen City; the second installment in the amount of $15,000 plus interest was due on June 22, 1974, and was also paid by Queen City; the third installment in the amount of $15,000 plus interest was due on June 22, 1971, but had not been paid as of the date of the trial of this action;

21. During the period November 1973 up to and including the trial of this action, Plaintiff continued to do business with Queen City."

The court made conclusions of law, as follows:

"1. By reason of the February 1971 letter and the course of dealing between Plaintiff and Defendant from February 17, 1971, to October 29, 1971, Defendant did guarantee indebtedness of Queen City to Plaintiff.

2. Notwithstanding Defendant's guarantee, the agreement between Plaintiff and Queen City embodied in Queen City's note to Plaintiff dated June 22, 1973, constituted a binding obligation, materially altered the terms of the obligation guaranteed by Defendant, and operated to release Defendant from liability on its guaranty of the open account indebtedness.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Plaintiff have and recover nothing of Defendant in this action and that the costs hereof be taxed to the Plaintiff."

From the entry of that judgment, plaintiff gave notice of appeal. There were no cross-assignments of error by defendant.

*Fleming, Robinson & Bradshaw, P.A., by Richard A. Vinroot and C. Richard Rayburn, Jr., for plaintiff appellant.*

*Caudle, Underwood & Kinsey, by William E. Underwood, Jr., for defendant appellee.*

---

---

VAUGHN, Judge.

The arguments in the briefs concentrate on whether defendant was released from its guaranty by plaintiff's acceptance of Queen City's note. Plaintiff argues that there were no material alterations in Queen City's obligations and that the execution of the note did nothing to prejudice defendant. Plaintiff further argues that the facts show that the note was taken with at least the implied assent of defendant. Defendant argues that the mere acceptance of the note, without the assent of defendant as surety, operated to discharge the surety without a showing of prejudice. Defendant further argues that the facts show that defendant was prejudiced.

The trial judge's conclusion of law No. 2 was obviously based on the following well established rule:

> "It is well settled that if the creditor enters into any valid contract with the principal debtor, without the assent of the surety, by which the rights or liabilities of the surety are injuriously affected, such contract discharges the surety. A familiar instance of this is where a creditor binds himself not to sue for or collect the debt for a given time, and thereby puts it out of the power of the surety to pay the debt and sue the principal debtor." *Deal v. Cochran,* 66 N.C. 269, 270.

A reason for the rule is that the surety cannot be deprived of his right to pay the debt and immediately proceed against the principal for indemnity. *Chemical Co. v. Pegram,* 112 N.C. 614, 17 S.E. 298. *See* Restatement, Security, sections 128 and 129.

The rule is sound. The question is whether it comes into play on the facts of this case. We conclude that it does not.

The facts as found by the trial judge are not disputed on appeal. Neither is his conclusion that defendant guaranteed the account. The judgment, therefore, discloses the following: Defendant guaranteed the account on 17 February 1971. On 29 October 1971, the account was past due. Plaintiff demanded that defendant pay the account. Defendant denied that it had guaranteed the account and refused to recognize that it had any obligation to plaintiff. Thereafter defendant did nothing to protect its rights against the debtor. On 22 June 1973 (nearly 18 months after defendant had refused plaintiff's demand for

payment) the debtor, in consideration of the account, executed a note to plaintiff for the amount of the account. The debtor paid the installments as due except for the final payment that became due on 22 June 1975. The present suit was started against defendant on its guaranty on 4 January 1974, and (with defendant continuing to deny the existence of this guaranty) judgment was entered on 26 April 1976. That judgment judicially determined the validity of defendant's guaranty about 10 months after the "extension" granted by plaintiff had expired. We conclude that defendant breached its contract with plaintiff on 29 October 1971, and it is clear [finding of fact No. 12] that it did not intend to pursue the principal debtor until the validity of the guaranty had been judicially determined. After defendant breached its contract, plaintiff exercised ordinary business prudence in successfully attempting to mitigate its damages. Of this, defendant will not be heard to complain.

That part of the judgment dismissing plaintiff's action is reversed and the case is remanded for entry of judgment awarding plaintiff the unpaid balance due on the account.

Reversed and remanded.

Chief Judge BROCK and Judge CLARK concur.