746 P.2d 579

**GEBRUEDER HEIDEMANN, K.G., a/k/a Gebr. Heidemann, K.G., a Limited Partnership; Wolfgang Kram, Receiver in Bankruptcy for Gebr. Heidemann, Merchant, Plaintiffs,**

and

**Volksbank Bitburg, E.G., a corporation, Plaintiff-Appellant–Cross Respondent,**

v.

**A.M.R. CORPORATION, an Idaho corporation, Defendant–Respondent–Cross Appellant.**

No. 16507.

Court of Appeals of Idaho.

Dec. 4, 1987.

Petition for Review Denied
Feb. 26, 1988.[*]

---

[*] Dissenting opinion on denial of review will be published.

Richard T. St. Clair, St. Clair, Hiller, Wood, McGrath, St. Clair & Baker, Idaho Falls, for plaintiff-appellant-cross-respondent.

Blair J. Grover, Grover & Walker, Chartered, Rigby, for defendant-respondent-cross-appellant.

BURNETT, Judge.

This is the second appeal in an action by a bank to foreclose on property mortgaged to secure a guarantor's obligation. Both parties have raised multiple issues. However, our decision requires us to address only two questions: (1) Was the guarantor discharged from its obligation? (2) Did the district court err in crediting payments made by the principal debtor against the guaranteed portion of the debt? The district court determined that the guarantor had been largely relieved of its obligation. The court also applied partial payments received from the debtor to the remaining guaranteed portion of the debt. For reasons explained below, we affirm the district court's judgment in part, reverse it in part, and remand the case for entry of an amended judgment consistent with our opinion.

This matter has been litigated for more than ten years. The parties do not dispute

the essential facts. Rather, they posit differing legal conclusions to be drawn from these facts. Gebrueder Heidemann, K.G., was a limited partnership organized according to the laws of the Federal Republic of Germany. Heidemann manufactured bicycles and exported them to the United States. A Utah corporation, Pan World International, Inc., imported bicycles and sold them through retail outlets throughout the western United States.

In the spring of 1974, Heidemann and Pan World contracted for Pan World to buy more than 8,000 bicycles from Heidemann for approximately $510,000. In connection with this transaction, A.M.R. Corporation, an Idaho enterprise, agreed for a fee to guarantee Pan World's obligation up to $250,000. A.M.R. executed a promissory note in this amount, secured by a second mortgage on property it owned near Rexburg in Madison County, Idaho. Under the Heidemann–Pan World agreement, payment for the bicycles would be made as provided in six "international trade acceptances"[1] between October 13, 1974, and April 26, 1975.

Pan World defaulted when the first trade acceptance came due. In fact, the Utah company eventually failed to honor any of the six trade acceptances. At the same time, Heidemann also experienced severe financial difficulty. The partnership filed for composition of its debts in a German bankruptcy court at the beginning of September, 1974. A temporary trustee was appointed, but Heidemann continued to do business until the trustee was appointed as a receiver and formal bankruptcy proceedings were commenced in January, 1975. In the meantime, during the autumn of 1974, Volksbank Bitburg, E.G., Heidemann's principal creditor, was assigned the right to proceed against Heidemann's outstanding assets, including the Pan World account.

Following the default on the first trade acceptance, Volksbank and Heidemann agreed to grant Pan World an extension of time. Volksbank sought A.M.R.'s approval for the extension. A.M.R.'s president initially voiced no objection but, on advice of counsel, A.M.R. eventually refused to give a written consent. Nevertheless, on November 1, 1974, Volksbank and Pan World entered into an agreement extending the time for payment on the remaining five trade acceptances. In addition, the agreement provided for Volksbank to receive a security interest in the Heidemann bicycles. Volksbank perfected its security interest by filing a financing statement in Utah.

Unfortunately, the bicycle business continued to decline. Pan World's sales dropped so dramatically that the company concluded it would not be able to satisfy even the extended terms contained in the November 1 agreement. Pan World's president contacted Heidemann by telex and suggested a further modification in the payment structure, based on a reduction in the proposed retail price of the bicycles. Heidemann, in the person of the trustee, responded positively to the proposal. Pan World began offering bicycles at a discount in its shops. Nevertheless, by the end of 1974, Pan World essentially ceased to exist as a viable business entity. During the winter of 1974–75, Pan World managed to make payments to Volksbank totalling $95,000. However, the rest of the debt remained unpaid. Thereafter, a portion of the bicycle inventory was distributed to various creditors of Pan World. In addition, a former officer of Pan World purchased several former franchises and sold bicycles from these stores. Eventually, more than 75% of the bicycles disappeared.

In 1976 Volksbank sued Pan World in a Utah state court. Volksbank sought, and obtained by default, a judgment for the entire balance due under the account with Heidemann. However, Pan World had become, in effect, judgment proof. Consequently, Volksbank filed suit in Idaho, requesting enforcement of the A.M.R. guaranty by foreclosing on the Madison County

---

1. A "trade acceptance" is defined as: "[a] draft drawn by a seller which is presented for signature (acceptance) to the buyer at the time goods are purchased and which then becomes the equivalent of a note receivable of the seller and the note payable of the buyer." BLACK'S LAW DICTIONARY 1338 (5th ed. 1979).

property. However, the district court ruled that the underlying obligation—the original Heidemann–Pan World contract—had been modified without A.M.R.'s consent, thereby releasing A.M.R. The court entered summary judgment in favor of A.M.R. Volksbank appealed.

Our Supreme Court set aside the judgment in *Gebrueder Heidemann, K.G. v. A.M.R. Corporation,* 107 Idaho 275, 688 P.2d 1180 (1984) (hereinafter cited as *Heidemann I*). The Supreme Court concluded that the district court had applied the wrong legal standard in determining that A.M.R. had been released due to modification of the contract between Heidemann and Pan World. The Court further held that "material issues of fact existed as to whether any modification was actually consummated, whether A.M.R.'s consent was a term of the November 1 modification, and whether the modification injured the interest of the guarantor." *Id.* at 280, 688 P.2d at 1185. The case was remanded for findings on these three issues.

On remand, the district court conducted a full trial. After considering all of the evidence, the court found that, despite the absence of A.M.R.'s consent, Volksbank and Pan World had, indeed, modified the original bicycle purchase agreement. The court also determined that the bicycles had disappeared as a result of Volksbank's delay in asserting its security interest. This loss of security, the court concluded, prejudiced A.M.R. Accordingly, the court relieved A.M.R. from liability under the guaranty except as to the first trade acceptance —which had come due before the November 1 modification. Finally, the court applied the $95,000 collected from Pan World to the amount guaranteed under this first trade acceptance. Judgment was entered in favor of Volksbank for the rather nominal balance of $4,855, plus interest, costs and attorney fees. The court authorized Volksbank to proceed against the mortgaged property if A.M.R. did not otherwise satisfy the judgment. Both sides appealed, Volksbank asserting that the judgment was inadequate and A.M.R. contending that attorney fees and costs should not have been awarded.

I

This controversy neatly exposes the difficulties inherent in the law of guaranty. Cut to its core, the dilemma is how to hold a guarantor to his promise without letting the other parties unfairly increase his risk. Every guarantor faces a risk that the principal debtor will default, that the debtor's ability to perform will continue to deteriorate, and that the creditor will be left looking to the guarantor as the sole source of recovery. But the guarantor is not without protection. A guarantor may safeguard his financial interests after a default by paying the debt and taking prompt action directly against the debtor. He also may be protected by operation of law. As noted above, when our Supreme Court remanded this case for trial, it established a framework for issues focusing not on the conduct of the guarantor but, rather, on the actions of the debtor and creditor. The Court concluded that the trial judge should discharge A.M.R. from its guaranty if, but only if, A.M.R. had been injured by the decisions of Volksbank and Pan World. We agree that the question of injury is critical to the outcome of this case. However, in its post-remand posture, we believe that the conduct of A.M.R. itself—and not only the actions of the principal debtor and creditor—bears on the outcome of the case.

We first discuss whether A.M.R. was discharged from its partial guaranty of the bicycle purchase agreement. Resolution of this question turns on whether the guarantor was injured by the conduct of the parties to the underlying agreement. A.M.R. asserts that it was harmed in two ways. First, it claims that the November 1 and telex modifications were detrimental to its position. Second, A.M.R. argues that Volksbank's failure, as a secured creditor, to prevent the dissipation of the bicycles also was injurious. As to the first contention, the district judge determined that the modifications were valid and binding. However, the judge made no findings concerning possible harm arising out of the modifications. As to the second contention, the judge simply stated that "A.M.R.

sustained injury as a result of the loss of the bicycles as security."

As the discussion below indicates, even accepting A.M.R.'s position that the alterations in the principal agreement were valid and binding, we are constrained to disagree with the judge's determination that A.M.R. was injured in the manner he described. The question of injury is framed by several legal principles. It is a mixed issue of law and fact on which we exercise free review. We now discuss each allegation of discharge.

## A

As our Supreme Court noted in *Heidemann I*, a surety or guarantor[2] may be discharged from his obligation to pay on behalf of the debtor where the underlying agreement between the debtor and creditor has been materially altered. 107 Idaho at 280, 688 P.2d at 1185. Traditionally, contracts of suretyship were interpreted according to the principle of *strictissimi juris;* modifications of the principal agreement, made without consent of the surety, automatically released him from his undertaking. *See, e.g., Uniontown Bank v. Mackey,* 140 U.S. 220, 11 S.Ct. 844, 35 L.Ed. 485 (1890); *Paulk v. Williams,* 110 S.E. 632 (Ga.Ct.App.1921). *See also Midland Motor Showrooms, Limited v. Newman,* 2 K.B. 256 (1929). The reason given for this rule has been stated as follows:

> The contract as changed is not the same contract guaranteed by the promisor. The original contract has been put to an end and a new one substituted. Since suretyship cannot be imposed without

the express consent of the promisor, the surety's execution of the original contract will not carry by implication any liability upon a substituted contract, although the latter may be similar to the first.

STEARNS § 6.2 (footnotes omitted).

This rule of strict construction has been broadened to distinguish between those sureties who act with and those who act without compensation. Gratuitous sureties remain governed by the "narrow" modification rule. However, the compensated surety bears the burden of demonstrating injury or prejudice caused by modification of the principal debtor's duty. This broadening from the traditional rule has gained widespread acceptance.[3] It was adopted by our Supreme Court more than twenty years ago. *See Ore–Ida Potato Products, Inc. v. United Pacific Insurance Company,* 87 Idaho 185, 392 P.2d 191 (1964). In that case, the Court cited the RESTATEMENT OF SECURITY (1941) (hereinafter cited as *Restatement* ). Section 128(b) provides, in pertinent part:

> Where, without the surety's consent, the principal and creditor modify their contract ...
>
> (b) The compensated surety is
>
> (i) discharged *if the modification materially increases his risk....*

(Emphasis added.)

In the present case, A.M.R. was a compensated guarantor. Its fee consisted of $1.50 per bicycle. Thus, the question is whether the November 1 and telex modifications produced a material increase in

---

**2.** For purposes of this analysis, there is no principled distinction between a surety and a guarantor. *See generally* STEARNS, THE LAW OF SURETYSHIP § 1.5 (J. Elder 5th ed. 1951) (hereinafter "STEARNS").

**3.** *United States v. United States Fidelity & Guaranty Co.,* 178 F. 721 (C.C.E.D.Pa.1910). *See also Chapman v. Hoage,* 296 U.S. 526, 56 S.Ct. 333, 80 L.Ed. 370 (1936); *Guaranty Co. v. Pressed Brick Co.,* 191 U.S. 416, 24 S.Ct. 142, 48 L.Ed. 242 (1903); *Anstalt v. F.I.A. Insurance Company,* 749 F.2d 175 (3d. Cir.1984); *Continental Bank & Trust Company v. American Bonding Company,* 605 F.2d 1049 (8th Cir.1979); *Wyoming Construction Company v. Western Casualty and*

*Surety Company,* 275 F.2d 97 (10th Cir.) *cert. denied,* 362 U.S. 976, 80 S.Ct. 1061, 4 L.Ed.2d 1011 (1960); *Maryland Casualty Co. v. Ohio River Gravel Co.,* 20 F.2d 514 (4th Cir.) *cert. denied,* 275 U.S. 570, 48 S.Ct. 157, 72 L.Ed. 431 (1927); *People v. Smith,* 645 P.2d 864 (Colo.Ct. App.1982); *Bayer & Mingolla Construction Company v. Deschenes,* 348 Mass. 594, 205 N.E.2d 208 (1965); *REA Construction Company v. The Ervin Company,* 33 N.C.App. 472, 235 S.E.2d 418 (1977); *Lloyd Corporation v. O'Connor,* 258 Or. 33, 479 P.2d 744 (1971); *McLaughlin Electric Supply v. American Empire Insurance Co.,* 269 N.W.2d 766 (S.D.1978); *Murray City v. Banks,* 62 Utah 296, 219 P. 246 (1923).

A.M.R.'s bargained-for risk. As noted previously, the first modification extended Pan World's time of payment by a few months. The telex modification actually accelerated the payment schedule but reduced the total purchase price. We fail to see how a reduction in a debtor's obligation can injure his guarantor. Accordingly, the sole question remaining is whether A.M.R. was harmed by the extension of time given to Pan World under the November 1 modification.[4]

An extension of time for payment by the principal debtor discharges the surety only to the extent that he is harmed by the extension. *Restatement* § 129(2). Here, A.M.R. claims that Volksbank's delay in forcing Pan World to satisfy its obligations caused injury because, as time passed, Pan World became less and less able to pay, thus increasing A.M.R.'s risk. This argument has some intuitive appeal, but we are not persuaded.

There is no evidence that Volksbank acted unreasonably. Rather, the principal parties and A.M.R. agreed to work together in an effort to obtain as much money as possible from struggling Pan World without taking any action that would put Pan World out of business. This course of conduct indicated an intention by Volksbank to seek satisfaction from Pan World before resorting to the guaranty. Armed with hindsight and *ex post* information, we can criticize this approach. But evaluating the parties' decision *ex ante*—that is, based on information then available—we think the parties acted reasonably. We decline to hold that a creditor is barred from seeking satisfaction from his debtor's guarantor simply because the creditor chooses, in the exercise of reasonable business judgment, to seek payment over an extended period rather than forcing the debtor into insolvency. *See Robert Simmons Construc-*

*tion Company v. The Powers Regulator Company,* 390 S.W.2d 901 (Ky.1965). "It is well known in the business world that a debtor limping but still alive is likely to pay a better percentage than a sudden bankrupt." *Id.* at 904.

The compensated surety, being in the business of evaluating the ability of debtors to perform, is in a position to measure his risk, including the possibility of an extension, and to charge a premium in accordance with the risk. *See* RESTATEMENT § 129, comment e. Presumably, A.M.R. did so in this case. The mere fact that an uncertain liability has become certain is no reason to discharge a guarantor. Furthermore, A.M.R. was at all times able to act to protect itself by performing and then assuming Volksbank's position in regard to the bicycles. *Austad v. United States,* 386 F.2d 147 (9th Cir.1967).

It will be recalled that Volksbank proceeded against A.M.R. in Idaho only after attempting unsuccessfully to collect from Pan World in Utah. But A.M.R. claims that Volksbank should have done more. A.M.R.'s argument boils down to an assertion that a creditor must proceed aggressively at the first opportunity against the principal debtor in order to preserve its right to seek relief from the guarantor. This argument is directly contradicted by the language of *Restatement* § 130(1). This section provides, in pertinent part, that "[t]he surety is not discharged because the creditor takes no action to enforce his claim against the principal unless the creditor's failure to act is a violation of a judicial decree." Comment a to this section sets forth the rationale:

The creditor in suretyship has two rights, one against the principal and the other against the surety. It would diminish the attractiveness and utility of the surety's obligation as security if the

---

4. We note some confusion in the district judge's findings concerning the modifications. The November 1 modification extended the time of payment on the last trade acceptance from April to July 1975. The December telexes moved the date of the last payment *back* to April. Nonetheless, the district judge concluded that the combined effect of these two alterations was to extend the time of payment beyond the dates set forth in the original contract. This finding is contradictory. However, it is immaterial to our resolution because even if we assume that the time of payment was extended until July, we still discern no legally cognizable injury to A.M. R.

creditor in all cases were obliged first to enforce his right against the principal. Since the surety may pay the claim of the creditor and himself proceed against the principal for exoneration in advance of payment (§ 112), the creditor's non-action generally affords no equitable basis for a claim of discharge by the surety.

*The rule stated in this Subsection is of importance in cases where the financial condition of the principal changes during the period of the creditor's non-action....* [Emphasis added.]

We agree with this reasoning. Pan World's declining financial condition—and its concomitant inability to satisfy its obligation—is no reason to discharge A.M.R. *Cf. State Bank of Burleigh County v. Porter,* 167 N.W.2d 527 (N.D.1969) (failure of creditor to proceed against debtor on demand of guarantors did not justify application of doctrine of equitable estoppel against creditor in creditor's action against guarantors).

█ Finally, even if A.M.R. had been legally prejudiced by the extension, due to the loss of the bicycles and the insolvency of Pan World, we would still conclude that A.M.R. had waived its objection to the November 1 extension by subsequently cooperating with Volksbank in seeking satisfaction from Pan World. By failing to take action to protect itself by performing the obligation itself, and then foreclosing Volksbank's security interest in the bicycles, A.M.R. lost the right to complain about the extension. "[I]f a surety, with knowledge of facts sufficient to discharge him from liability, does any affirmative act

which contemplates the continued existence of that status, he thereby waives his right to claim that he is discharged." STEARNS § 6.33. We hold that A.M.R. was not discharged by any modification of the bicycle purchase agreement.[5]

**B**

We next decide whether A.M.R. was released on account of Volksbank's failure, as a secured party, to prevent dissipation of the bicycles. A.M.R. asserts that Volksbank's "delay" in enforcing its security interest allowed the bicycles to disappear. This argument is similar to A.M.R.'s first contention. The sole difference is that this argument focuses upon Volksbank's security interest rather than upon Volksbank's general delay in collecting the debt from Pan World. Volksbank responds that acquiring a security interest for an existing debt does not release a guarantor. However, the district judge sided with A.M.R. He ruled that "A.M.R. Corporation sustained injury ... to the extent that a security interest in the bicycles was granted to Volksbank prior to any efforts to secure A.M.R. and that the delay occasioned by Volksbank's failure to go against the secured bicycles prevented A.M.R. from recouping its obligation then accrued."

█ We must first determine whether the existence of the security interest itself discharged A.M.R. Unless the guaranty agreement provides otherwise, a secured creditor is not generally required to proceed against security prior to compelling performance by the guarantor.[6] How-

---

5. Because we conclude that A.M.R. was not injured by the modifications, we need not broach Volksbank's argument that the November 1 agreement specifically reserved Volksbank's right to proceed against A.M.R.—an issue that the district court also did not reach. Nonetheless, we note that the November 1 agreement did contain language sufficient to create a reservation of rights against A.M.R. *See* STEARNS § 6.34. The effect of such a reservation by the creditor is to qualify the extension of time in that, although the creditor binds himself not to proceed against the debtor until maturity of the extension, he has not changed his relationship with the guarantor. He has specifically reserved his right to sue the guarantor at once.

*Id.* The reservation does not abrogate the guarantor's right to proceed against the debtor. Thus, he may pay the debt and sue the principal at once, as he could under his original guaranty. Accordingly, there is said to be no alteration of the guarantor's contract and no equitable reason for urging his discharge. *Id.*

6. *Restatement* § 131 provides, in pertinent part:
(1) ... [A] creditor who has a security interest in property of the principal may compel performance by the surety before resorting to this security interest.
(2) The creditor has a duty first to enforce his security interest in the property of the principal, if

ever, where failure to do so would cause unusual hardship to the surety, the creditor may be forced to proceed first against his security. The surety bears the burden of demonstrating unfairness to himself before the court will invoke its power to provide relief. *Restatement* § 131, comment b. *Compare Mack Financial Corp. v. Scott,* 100 Idaho 889, 606 P.2d 993 (1980) (guarantor discharged when secured creditor acted unreasonably in disposing of collateral and lost its entitlement to a deficiency).

Here, as discussed at length above, we can ascribe no unusual hardship to Volksbank's obtaining of a security interest but then electing not to proceed immediately against Pan World's inventory. A.M.R. has made no showing that, but for Volksbank's security interest, A.M.R. itself would have proceeded against the bicycles. Indeed, without paying the principal debt and assuming Pan World's position, A.M.R. would have had no right to seize and sell the bicycles.[7] Other than the increased likelihood that A.M.R. would become liable on its guaranty, Volksbank's conduct had no collateral harmful effects. No "unusual hardship" arises *per se* from actions which incidentally increase the possibility that a bargained-for uncertainty will become a certainty. The question, again, is one of reasonable business judgment.

The next question is whether A.M.R. is discharged because Volksbank caused or allowed the bicycles to disappear. Section 132 of the *Restatement* provides as follows:

> Where the creditor has security from the principal and knows of the surety's obligation, the surety's obligation is reduced pro tanto if the creditor
>
> (a) surrenders or releases the security, or
>
> (b) wilfully or negligently harms it, or
>
> (c) fails to take reasonable action to preserve its value at a time when the

surety does not have an opportunity to take such action.

The district judge's findings on this question, though sparse, appear to indicate that Volksbank took no affirmative steps under subsections (a) and (b) to impair the collateral. However, the judge laid the blame upon the party directly in control of the bicycles—Pan World. He concluded that "the bicycles disappeared *through no fault of the parties* by virtue of Pan World letting the bicycles be taken by [other] creditors...." (Emphasis added.) We fail to see how misconduct of the debtor relieves a guarantor from its obligation to the principal's creditor. It is the creditor's conduct upon which our inquiry focuses. *See Durfee v. Kelly,* 228 Mass. 571, 117 N.E. 907 (1907).

Subsection (c) raises the question whether Volksbank failed to take "reasonable action" to preserve the value of the bicycles at a time when A.M.R. did not have an opportunity to take such action. The undisputed evidence indicates that Volksbank perfected its security interest in the bicycles by filing a financing statement in Utah. *See* I.C. § 28–9–302. Pan World retained possession of the bicycles, but Volksbank required a periodic report from the debtor on the status and location of the bicycles. In the meantime, Volksbank—in cooperation with A.M.R.—managed to extract $95,000 from Pan World without resorting to the security. These steps to protect both the security and A.M.R.'s position were reasonable under the circumstances. *See American Bank of Commerce v. Covolo,* 88 N.M. 405, 540 P.2d 1294 (1975) (where creditor acts reasonably and in good faith to protect rights of guarantor, the latter will not be discharged). *Accord Ramsey National Bank & Trust Company v. Suburban Sales & Service, Inc. of Devils Lake,* 231 N.W.2d 732 (N.D. 1975). Volksbank and its temporary trustee were both located in the Federal Repub-

---

(a) his failure to do so will result in unusual hardship to the surety and doing so will not prejudice the creditor....

**7.** A.M.R. had no security interest in the bicycles. The record discloses that A.M.R. filed financing

statements in Utah and elsewhere, but a financing statement does not create a security interest which does not otherwise exist. *John Boyle & Company v. Colorado Patio and Awning Co., Inc.,* 654 P.2d 335 (Colo.Ct.App.1982).

lic of Germany, more than 5,000 miles away from the bicycles. The bare fact that Pan World failed to comply with its duties does not demonstrate the inadequacy of Volksbank's efforts. That Volksbank, in retrospect, could have attempted to assert even greater control, is insufficient to discharge A.M.R. *See Nashua Trust Company v. Weisman*, 445 A.2d 1101 (N.H.1982).

 Furthermore, as noted earlier, A.M.R. failed to avail itself of available remedies. No security was taken or contemplated at the time that A.M.R. gave its unconditional guaranty in April 1974. A.M.R. knew, or should have known, that it was guaranteeing an unsecured debt.[8] This fact alone has led some courts to conclude that the guarantor is precluded from asserting dissipation of collateral as a defense. *See, e.g., First State Bank v. Peterson*, 205 Neb. 814, 290 N.W.2d 634 (1980). The rationale for this rule is straightforward. The original guaranty agreement did not require Volksbank to proceed against any security. Thus, A.M.R. cannot argue that it acted in reliance on Volksbank's subsequently obtained right to obtain possession attaching the bicycles. A.M.R. gave an absolute guaranty. *See Paul Revere Protective Life Insurance Co. v. Weis*, 535 F.Supp. 379 (E.D.Pa.1981) *aff'd without opinion*, 707 F.2d 1403 (3d Cir.1982); *First National Consumer Discount Company v. McCrossan*, 486 A.2d 396 (Pa.Super.Ct.1984).

We conclude that the district court erred in ruling that A.M.R.'s guaranty was discharged by the modifications after the default on the first trade acceptances. The guaranty remained in effect as to all of the trade acceptances, up to the ceiling of $250,000 specified in the guaranty agreement and evidenced by A.M.R.'s promissory note.

## II

Our resolution of the discharge issue makes it unnecessary for us to address A.M.R.'s cross-appeal on costs and attorney fees. However, it remains for us to comment on Volksbank's contention that the $95,000 collected from Pan World should be applied to the nonguaranteed portion of the debt rather than to A.M.R.'s guaranty.

 The guaranty agreement and the underlying Heidemann–Pan World agreement are the only places where the parties could have set forth terms governing application of payments on the trade acceptances. There is no other evidence that the parties stipulated how the payments were to be applied. Generally, if the debtor and creditor fail to provide for application of payments under a contract, the court may, in its exercise of discretion, do so. *See generally* 60 AM.JUR.2D *Payment* § 94 (2d ed. 1987). For guidance on remand, we instruct the trial court to ascertain whether the underlying agreement or the guaranty agreement purports to direct payment. If it does not, the court may apply the payments received as it deems proper, explaining the basis of its equitable decision.

Accordingly, the judgment of the district court is affirmed insofar as it recognizes the enforceability of the guaranty. The judgment is reversed insofar as it limits the guaranty to the first trade acceptance. The case is remanded for the court to redetermine the proper application of the $95,000 received and to enter an amended judgment accordingly. Costs to appellant Volksbank. Pursuant to the promissory note, attorney fees on appeal are awarded to Volksbank in an amount to be determined under I.A.R. 40(d).

WALTERS, C.J., and SWANSTROM, J., concur.

---

8. An unconditional or absolute guaranty is the agreement to pay the debt of the principal upon maturation without any express limitation set forth in the guaranty. *Joe Heaston Tractor & Implement Company v. Securities Acceptance* *Corporation*, 243 F.2d 196 (10th Cir.1957). The language of A.M.R.'s guaranty agreement simply provided for payment upon Pan World's default, without qualification.