9 F.3d 1553
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
SINCLAIR OIL CORPORATION, a Wyoming Corporation, Plaintiff-Appellant,
v.
Forrest R. SCHAEFER; Lynn F. Schaefer, Defendants-Appellees.
 No. 91-36089.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 4, 1993
Decided Nov. 2, 1993.
 
 Before: Goodwin, Schroeder and Pregerson, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Sinclair Oil Corporation appeals the district court's summary judgment in favor of Forrest R. Schaefer in Sinclair's action to collect $76,000 under a personal guaranty contract signed by Schaefer. Sinclair's predecessors required Schaefer to sign the contract as a condition of extending credit to Blue and White Transport, Inc., a corporation which Schaefer owned and which has since become bankrupt. We have jurisdiction over the appeal under 28 U.S.C. § 1291. We reverse and remand.
 
 BACKGROUND
 
 3
 In October 1983, Appellee Forrest Schaefer was the majority shareholder, officer, and director of Blue & White Transport, Inc. ("Blue & White"). He executed a personal guaranty in favor of two corporations that later merged into Appellant Sinclair Oil Corporation. The guaranty contract supports the corporations' credit sales of petroleum products to Blue & White. The contract is "unlimited as to the amount of [o]bligations covered ...," and relates to "any additional credit" that the corporations, in their discretion, extend to Blue & White. (Appellant ER, Exhibit A). Furthermore, the contract contains no expiration date and provides that it "is a continuing and unconditional guaranty" that shall remain in full force and effect until thirty days after the receipt of a signed, written notice of termination and until payment of Blue & White's debts through the end of the thirty-day period. Id.
 
 
 4
 The October guaranty contract was the last of several guaranties that Schaefer executed in favor of Sinclair's predecessor corporations. Virtually every year, the corporations requested that he sign a new guaranty contract. (Schaefer Memorandum in Support of Motion for Summary Judgment, p. 2; Affidavit, p. 2).
 
 
 5
 In March 1986, Schaefer sold his interest in Blue & White, leaving his sons as sole shareholders, and resigned as company officer and director. Schaefer never sent a written notice of termination of the guaranty. (Schaefer Deposition, p. 17, Appellee ER, p. 30). Instead, Schaefer told Sinclair's agent that he no longer had any responsibility for Blue & White's affairs, and nobody ever mentioned that Sinclair considered Schaefer continually liable under the guaranty. (Schaefer Deposition, pp. 19-20, 24, Appellee ER, pp. 32-33, 37). After Schaefer withdrew from Blue & White, Sinclair requested the new guaranty from his sons, not from Schaefer, as owners of the company. (Schaefer Deposition, p. 20, Appellee ER, p. 33).
 
 
 6
 Also after Schaefer's withdrawal, Sinclair imposed a $75,000 credit limit on Blue & White, without Schaefer's consent. (Schaefer Deposition, p. 24, Appellee ER, p. 37). Previously, Sinclair had provided an unlimited credit line to Blue & White, which the company occasionally ran up to $250,000. (Schaefer Deposition, pp. 22-23, Appellee ER, pp. 35-36). After Schaefer transferred ownership of the company, Sinclair agreed to raise Blue & White's credit limit to $100,000, if Schaefer signed another continuing and unconditional guaranty for unlimited liability; Schaefer received the new guaranty, signed it, and never returned it to Sinclair. (Schaefer Deposition, pp. 28-29, Appellee ER, pp. 41-42; Exhibit 1, ER, pp. 7-8). Blue & White filed bankruptcy in 1990; the company still owes approximately $76,000 to Sinclair.
 
 
 7
 Based on the guaranty contract, Sinclair sued Schaefer to collect the $76,000 owed by Blue & White. On cross-motions for summary judgment, the district court granted summary judgment in favor of Schaefer. Sinclair appeals.
 
 ANALYSIS
 
 8
 We review de novo the district court's grant of summary judgment in favor of Schaefer. Jones v. Union Pac. R.R., 968 F.2d 937, 940 (9th Cir.1992). Viewing the evidence in the light most favorable to the nonmoving party, Sinclair Oil, we must determine whether there were any genuine issues of material fact for trial and whether the district court correctly applied the relevant substantive law. Federal Deposit Ins. Corp. v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir.1992).
 
 
 9
 Under guaranty law, if Schaefer was a gratuitous guarantor, his obligation would be discharged by the material alteration of the principal contract that increased his risk of liability, absent his consent. However, because his contract covered the credit reduction, contract law principles require us to find consent and therefore to reject Schaefer's guarantor defense.
 
 
 10
 1. A Material Alteration in the Underlying Principal Contract Did Not Increase Schaefer's Risk of Liability Beyond the Scope of the Guaranty Contract
 
 
 11
 We find that, even if the district court correctly ruled that Schaefer was a gratuitous guarantor, Schaefer's guarantee obligation was not discharged by the reduction in Blue & White's credit limit. For our analysis, we discuss the guaranty law test for discharge and then the express terms of Schaefer's contract, by which he effectively consented to the credit reduction and forfeited any defense under guaranty law.
 
 
 12
 A. Guaranty Law: Discharge of Guarantor's Obligation
 
 
 13
 The district court in this case applied § 128(a) of the Restatement of Security as the test under Idaho law for discharging liability of a gratuitous guarantor. Under that section, all guarantors, including gratuitous guarantors, remain liable after an unconsented-to, material alteration of the underlying principal contract, if the modification "can only be beneficial" to them. Restatement of Security § 128(a); § 128(a), cmt. f (1941) (emphasis added). For continued liability, the modification "must be of the sort that by its very nature, in no circumstances, can increase the risk of ... a surety." Id. at cmt. e (emphasis added).
 
 
 14
 A modification that can only be beneficial to the guarantor is "the reduction of the total amount due" from the principal. Id. For example, the principal and creditor reduce the amount owed for purchased products, even though the guaranty covers the total debt. Gebrueder Heidemann, K.G. v. A.M.R. Corp., 746 P.2d 579, 584 (Idaho App.Ct. 1987) ("Heidemann II") ("We fail to see how a reduction in a debtor's obligation can injure his guarantor."), review denied, 750 P.2d 378 (Idaho 1988); Restatement of Security § 128(a) cmt. e, illus. 6 (parties reduced guaranteed rent obligation from $300 to $250 per month).
 
 
 15
 This case is distinguishable from cases involving reduction of a guaranteed debt. Where a modification of the principal's obligation "indirectly affect[s] the probability of performance by him, the surety may be discharged." 10 Williston on Contracts § 1241 (3d ed. 1967) (citing Atterbury v. Carpenter, 321 F.2d 921 (9th Cir.1963) (reversing Oregon district court and applying the Restatement of Security)). In Atterbury, an increase in the principal's debt and interest rate without an increase in the extent of a gratuitous guarantor's liability discharged the gratuitous guarantor's liability, because the modification "made it more difficult for [the principal] to repay and thereby increased the risk ... [of] default" and resort to the guarantor's assets. Atterbury, 321 F.2d at 924. In this case, the district court found that the reduced credit line must have placed Schaefer at greater risk that Blue & White would default, because the company had been operating for years with an unlimited credit line. (Memorandum Decision, p. 3). Sinclair does not dispute that the reduced credit limit could potentially be injurious to Schaefer. (Memorandum Decision, p. 5).
 
 
 16
 Still, Sinclair argues that the district court erred by concluding that Schaefer, as a gratuitous guarantor, need not prove actual injury. Idaho law clearly requires that a compensated guarantor show prejudice, as well as a material alteration of the underlying contract, to relieve himself of liability. Ore-Ida Potato Products, Inc., 392 P.2d at 199; Heidemann I, 688 P.2d at 1185. Sinclair points to the fact that the Idaho Supreme Court, in Heidemann I, expressly left the question of whether a gratuitous guarantor must show injury open. Heidemann I, 688 P.2d at 1185 ("Without deciding whether a 'gratuitous' guarantor must show injury, we hold that A.M.R. is not a gratuitous guarantor.").
 
 
 17
 Because the Court has not announced that "actual injury" is the appropriate test for gratuitous guarantors under Idaho law, we do not require such proof here. See Ore-Ida Potato Products, Inc., 392 F.2d at 199 ("[G]ratuitous guarantors ... are regarded as favorites of the law."); Kaufman, 810 P.2d at 1148 (gratuitous guarantor's liability discharged by extension agreement; no proof of prejudice required); Heidemann II, 746 P.2d at 583 ("Gratuitous sureties remain governed by the 'narrow' modification rule. However, the compensated surety bears the burden of demonstrating injury or prejudice caused by modification of the principal debtor's duty."). Because Schaefer could be injured by the reduced credit line, if he was a gratuitous guarantor, his obligation would be discharged absent consent, by his contract, to the change.
 
 
 18
 B. The Terms of the Guaranty Contract Negate Schaefer's Defense of Material Alteration
 
 
 19
 Sinclair contends, and we agree, that contract law, rather than guaranty law, determines the outcome of this case. "The extent of a guarantor's liability is determined by the precise terms of the guaranty contract." Valley Bank v. Larsen, 663 P.2d 653, 655-56 (Idaho 1983) (citations omitted). A guarantor is not liable for debts that he did not agree to guarantee. However, even a gratuitous guarantor is bound by his contract. Id. at 659.
 
 
 20
 By the guaranty contract, Schaefer waived a defense of material alteration of the principal contract. In effect, Schaefer consented to future extensions of credit on any terms, even if new terms effected an increase in his risk of liability. The following provisions in the guaranty contract authorize Sinclair's predecessors to define the amount of Blue & White's credit: Schaefer's guaranty serves:
 
 
 21
 [T]o induce [the creditors,] at [their] discretion, at any time hereafter to extend any additional credit to Debtor" Blue & White, for merchandise, or "to extend credit in any other manner ...[;] liability hereunder [is] unlimited as to the amount of [o]bligations covered.... [Schaefer] guarantees that the [o]bligations will be paid ... strictly in accordance with the terms and provisions of any agreement ... which has been or may hereafter be made or entered into by the Debtor....
 
 
 22
 (Appellant ER, Exhibit A) (emphasis added). We find that Sinclair's broad contract rights and Schaefer's broad guaranty obligation negate Schaefer's guarantor defense. See McGill v. Idaho Bank & Trust Co., 632 P.2d 683, 688 (Idaho 1981) (guaranty liability based on contractual waiver of the defense of release of the principal debtor); Valley Bank, 663 P.2d at 657 (express waiver of statutory defense against a deficiency judgment action); Restatement of Security § 128, cmt. c ("The consent of the surety to alterations is binding on him ... [if] expressed as a part of his obligation.... [H]e is bound on his contract....").
 
 
 23
 In this case, Schaefer did not bargain for protection from the credit line reduction. The obligations for which Schaefer agreed to be bound were broad enough to cover the modified credit terms. We reverse the district court's grant of summary judgment for Schaefer based on the incorrect finding of discharge due to increased risk of liability.
 
 2. Parties' Requests For Attorney Fees
 
 24
 Sinclair and Schaefer request awards of their attorney fees on appeal pursuant to Idaho Code § 12-120(3). The Idaho statute provides for a reasonable attorney fee to the prevailing party, in an action to recover on a guaranty. Idaho Code § 12-120(3) (1970). Sinclair also relies upon the express terms of the guaranty contract signed by Schaefer. The guaranty contract states that Schaefer guarantees payment of all expenses that may be incurred in enforcing any rights under the contract. (Appellant ER, Exhibit A). We grant Sinclair's requests for an attorney fee award. We also grant Sinclair's request for reversal of the district court's attorney fee award to Schaefer pursuant to Idaho Code § 12-120(3).
 
 
 25
 REVERSED AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3